LUIS VALENTÍN y su esposa AURELINA GONZÁLEZ MELÉNDEZ, demandantes y apelados, *v.* JACINTO FIGUEROA LARA, demandado y apelante.

Número 11683.

*Sometido:* 23 de noviembre de 1955. *Resuelto:* 19 de junio de 1956.

*Oscar R. Brizzie,* abogado del apelante; *F. González, Jr.,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

El 4 de octubre de 1954 Luis Valentín y su esposa Aurelina González Meléndez iniciaron la presente acción contra Jacinto Figueroa Lara para obtener el desalojo de éste de un local—casa de concreto—destinado a negocio en Juncos. El referido inmueble fué adquirido por los demandantes el 16 de febrero de 1954, por compra a Zoilo Méndez Ríos y su esposa Teresa Sánchez. En la demanda alegaron que habían adquirido dicho inmueble con el único fin de dar por terminado el arrendamiento con el demandado—quien lo ocupaba por contrato de mes en mes con los anteriores dueños, mediante el pago de un canon de $60 mensuales—por interesar el referido local de buena fe para su propio uso: establecer en el mismo un negocio de mercancía seca; y que, al efecto, le notificaron por escrito, el 8 de marzo de 1954, dando por terminado dicho contrato a partir del día 30 de ese mes de marzo, y requiriéndole para que desalojara el local en el término de 6 meses a contar de esta última fecha, enviando copia de dicho requerimiento por correo certificado a la Oficina de Inquilinato de la Administración de Estabilización Económica.

Después de una contestación en que el demandado negó que el contrato con el anterior dueño fuera uno vencedero de mes en mes—alegando que era uno por tiempo indefinido —y que los demandantes interesaran el referido local de buena fe para uso propio, y en la que alegó, por vía de defensa, que el tribunal carecía de jurisdicción por no aparecer en la Oficina de Inquilinato constancia de haber remitido a ésta copia del requerimiento de desalojo mencionado en la demanda, y que el contrato del demandado con los anteriores dueños fué aceptado y ratificado por los demandantes después de la adquisición por éstos de la propiedad objeto del pleito, se celebró el juicio en sus méritos, dictando el tribunal a quo sentencia declarando con lugar la demanda.

En apelación los demandados señalan como errores del tribunal sentenciador el resolver (1) que la notificación de copia de la demanda a la Oficina de Administración de Inquilinato, en la misma fecha en que se presentó dicha demanda, no es necesaria, y que ésta aduce hechos constitutivos de causa de acción a pesar de no contener alegación alguna a ese respecto; (2) que la notificación de copia de la demanda, hecha a la referida agencia el 15 de noviembre de 1954, era suficiente, a pesar de haber sido presentada aquella el 4 de octubre de 1954; (3) que tenía jurisdicción para conocer del caso; y (4) que los demandantes adquirieron el inmueble objeto del desahucio para, de buena fe, establecer en el mismo un negocio de mercancía seca.

▮ Los dos primeros errores señalados no son estimables.[1] En *Fernández & Hno.* v. *Pérez et al.*, ante pág. 244, (1956), resolvimos, en circunstancias esencialmente idénticas a las del presente caso—envío de la demanda a la Oficina de Inquilinato de la Administración de Estabilización Económica 9 días después de iniciada la acción, sin que se hiciera constar en dicha demanda, por lo tanto, el referido envío—que se cumplió a cabalidad con el requisito fijado por la Orden Administrativa núm. 7 promulgada el 5 de marzo de 1953 por la referida Agencia, cuyo propósito es el de "poner sobre aviso a la Oficina de Estabilización Económica para que ésta, si lo cree necesario, pueda comparecer en corte en defensa de los derechos que la ley y los reglamentos conceden a los inquilinos".

---

[1] En este caso, aparece de autos que, luego de posponerse la primera comparecencia a solicitud del demandado, éste, al celebrarse posteriormente dicha audiencia, suscitó la cuestión de que no se había enviado copia de la demanda a la Oficina de Inquilinato de la Administración de Estabilización Económica. Los demandantes se allanaron en corte abierta a dicha cuestión y solicitaron permiso, que les fué concedido por el tribunal, para notificar su demanda a la referida agencia, lo cual hicieron posteriormente, habiéndose convocado nuevamente a las partes para la *primera* comparecencia, a celebrarse el 18 de noviembre de ese mismo año. El juicio se celebró el 23 de diciembre siguiente.

Tampoco es estimable el tercer error señalado, sobre falta de jurisdicción del tribunal sentenciador para conocer de la acción. Funda ahora el apelante su reparo jurisdiccional en su contención de que el contrato de arrendamiento con los anteriores dueños del inmueble fué reconocido y ratificado por los nuevos dueños y que, por ese motivo, no excediendo de $1,000 el canon de dicho arrendamiento—computado por una anualidad—correspondía al Tribunal de Distrito la jurisdicción para entender en el caso, en virtud de lo dispuesto en el art. 622 del Código de Enjuiciamiento Civil.

Descansa el apelante, para sostener su contención de que el contrato fué aceptado y ratificado por los demandantes, en una carta que con fecha 20 de febrero de 1954—4 días después de haber adquirido éstos el inmueble en cuestión— le dirigió a nombre de Aurelina G. de Valentín el Sr. Eligio González, su apoderado, que dice así:

"Por la presente le informo que por escritura pública ante el notario Lcdo. Antonio Figueroa Rivera, la suscribiente obtuvo por compra la propiedad que usted ocupa y que fué antes del Sr. Zoilo Méndez y esposa.

"Por tal motivo y por mutuo acuerdo de las partes hemos convenido que a partir del día 1o. del corriente mes haga efectivo los cánones de alquiler a mi hermano Sr. Eligio González que es actualmente mi apoderado."

El tribunal sentenciador, sin embargo, no dió a la referida carta el alcance que le atribuye el apelante, en vista no sólo del testimonio del propio apoderado en el juicio, sí que también del poder otorgado a éste por los demandantes en la ciudad de Nueva York el 6 de febrero de 1954—10 días antes de la adquisición a través de dicho apoderado del inmueble que nos ocupa—y por virtud del cual se le autorizó para que en nombre y representación de los demandantes adquiriera por compra bienes muebles o inmuebles, con facultad bastante para otorgar los documentos que fueren necesarios a esos fines, incluyéndose, específicamente, lo siguiente:

"3o.—Este poder se extiende también a autorizar al Sr. González Meléndez a establecer en nombre y representación de los aquí poderdantes demanda de desahucio contra el inquilino o inquilinos que ocuparen el inmueble que el Sr. González Meléndez comprare para sus poderdantes, pudiendo representarlos tanto en el Tribunal competente como en la Oficina de Inquilinato, y firmar demandas, solicitudes, o documentos de cualesquiera clase que fueren necesarios para el fin antes indicado."

El tribunal a quo concluyó que los demandantes nunca aceptaron ni ratificaron, por virtud de la carta de 20 de febrero, el anterior contrato de arrendamiento, considerando que el único propósito de dicha comunicación fué el de indicarle al demandado que el pago del canon correspondiente al mes de febrero lo hiciera al apoderado, por haberlo así convenido el anterior dueño con el comprador.

No es la referida carta el factor determinante de si los nuevos dueños aceptaron y ratificaron el anterior contrato de arrendamiento. Hay un hecho posterior decisivo. Al notificar los demandantes al demandado, por la carta del 8 de marzo de 1954, que daban "por terminado por medio de la presente el contrato de arrendamiento que Ud. tenía con el dueño anterior de dicho inmueble, a partir del 30 de marzo de 1954", y requerirle "por medio de la presente para que desocupe dicho local, concediéndole a tal efecto el término de 6 meses que fija la ley, a partir del 30 de marzo de 1954" no hicieron otra cosa que prorrogar el contrato de arrendamiento anterior hasta el 30 de marzo de 1954, creándose en tal virtud la relación jurídica de arrendador y arrendatario por el período del mes de marzo, ya que el demandado podía legítimamente ocupar dicho inmueble, bajo su contrato con los anteriores dueños, hasta el último día del mes de febrero. Aún así, desde luego, ellos podían negar la prórroga ulterior de dicho contrato, como lo hicieron—a los fines de ejercitar la acción autorizada por el art. 12-A-7 de la Ley de Alquileres Razonables—efectivo al terminar dicho mes de marzo, pero la existencia de la nueva relación contractual así creada

durante dicho mes, hace inaplicable al demandado, en derecho, el concepto de detentador, y en vista de que el canon de arrendamiento computado por una anualidad, no excedía de $1,000 al año, la autoridad para conocer dicha acción correspondería al Tribunal de Distrito—art. 622 del Código de Enjuiciamiento Civil y secs. 10 y 18 de la Ley de la Judicatura de 24 de julio de 1952—y no al Superior, *Maldonado* v. *Rivera*, 72 D.P.R. 878, ya que, no tratándose de un desahucio por detentación, no tendrían vigencia nuestras decisiones en los casos de *Torres* v. *Biaggi*, 72 D.P.R. 869; *Díaz* v. *Morales*, 71 D.P.R. 692; *Vidal* v. *Corte*, 71 D.P.R. 582; *Pérez* v. *Tribunal*, 70 D.P.R. 656; *Vélez* v. *San Miguel*, 68 D.P.R. 575, y otros.

Sin embargo, habiéndose iniciado la acción en el Tribunal Superior, que es una de las dos Secciones que componen el Tribunal de Primera Instancia—sección 9 de la Ley de la Judicatura, supra—y seguido el procedimiento hasta la sustanciación del juicio en dicho tribunal, el hecho de que conociera del asunto "una sección sin jurisdicción o autoridad" para ello no conlleva, bajo el estado actual de nuestra legislación—sección 10 de la Ley de la Judicatura citada—y de nuestra jurisprudencia, *Rodríguez* v. *Registrador*, 75 D.P.R. 712, la desestimación de la acción, ni produce el efecto de anular la sentencia dictada.

Por el cuarto señalamiento de error impugna el apelante la conclusión del tribunal sentenciador sobre la buena fe de los demandantes al intentar recobrar la propiedad para dedicarla a su propio uso. Su principal argumento es que la única prueba a ese efecto consistió del testimonio del apoderado de los demandantes, Eligio González Meléndez, siendo dicho testimonio inadmisible por constituir prueba de referencia; y que, en todo caso, dicha prueba no es suficiente para establecer un caso claro de buena fe.

No podemos convenir en el apuntado error. En cuanto al primer extremo, si bien es cierto que el único testimonio

en el pleito es el del apoderado, dicho testimonio no puede juzgarse de referencia. González Meléndez estaba emparentado con los demandantes: era hermano de Aurelina y cuñado de Valentín. A consulta de su hermana, y con motivo del estado de salud en que se encontraba su padre, le aconsejó a éstos—en ocasión de un viaje suyo a Nueva York, donde residían, reiterando indicaciones previas a su hermana y cuñado en visita de ellos a Puerto Rico—que se trasladaran a la isla y establecieran un negocio. En Nueva York tanto su hermana como su cuñado trabajaban. El dinero lo obtuvo su hermana de la suegra. Él sabía que su hermana venía para Puerto Rico a establecer un negocio, no porque ella se lo hubiera dicho, sino porque entre los tres lo habían decidido, cuando él fué a Estados Unidos. Su cuñado vino a la isla a buscar dinero de la madre, de una casa que tenía en Aguadilla, y "sacó el giro".

Es evidente que no se trata de prueba de referencia. El apoderado, por su relación familiar con los demandantes, intervino activamente en la decisión de éstos de trasladarse a Puerto Rico a establecer un negocio. Fué precisamente su consejo—por su interés de tener a su hermana cerca, dado el estado de salud de su padre—lo que movió a los demandantes a conseguir el dinero para ese propósito. La culminación de esa decisión la representa el poder conferídole por ellos para comprar "bienes muebles o inmuebles o de cualquier otra clase bajo los términos, pactos y condiciones que estime conveniente autorizándole a firmar con tal fin todos los documentos de cualquier clase que fueren necesarios", así como para endosar cheques y cobrar su importe, otorgar escrituras de compraventa y constituir hipotecas de precio aplazado según los términos y condiciones que estimare convenientes. Específicamente corrobora el propósito para el cual se adquirió la propiedad objeto del desahucio, la cláusula tercera transcrita anteriormente, por la que se le autoriza a establecer, en su nombre y representación, "demanda de desahucio contra el inquilino o inquilinos que ocu-

paren el inmueble que el Sr. González Meléndez comprare para sus poderdantes".

■ Tampoco podemos convenir en que la prueba es insuficiente para establecer la buena fe que requiere la ley bajo la causal de la sec. 12-A-7. En *Sucn. Pérez* v. *Gual*, 75 D.P.R. 385, y en *Roselló Hnos.* v. *Figueroa*, 78 D.P.R. 261, expusimos el significado de la buena fe en acciones de esta naturaleza, indicando en el primero que significa "honestamente, sin fraude, colusión o engaño", requiriendo que la prueba demuestre "que los demandantes no hayan actuado motivados por cualquier intención que no sea la de obtener el local para establecer su negocio"; y en el segundo, indicamos que buena fe es "aquella limpieza en el propósito que deje satisfecha la conciencia moral del juzgador".

La buena fe, desde luego, siendo un requisito para el desalojo del inquilino, debe ser probada por la parte demandante. Esa prueba debe convencer al juzgador de que el único propósito que le anima es la de obtener el local arrendado para uso propio, dentro de las normas jurisprudenciales apuntadas, y no meramente el de obtener, para cualquier otro propósito, el desalojo del inquilino. Como dijimos en *Roselló Hnos.* v. *Figueroa*, supra, se trata "de una prueba de intención que debe ser inferida de todas las circunstancias que rodean el contrato de inquilinato, y comprende la conducta anterior y posterior a la solicitud de desalojo de las partes envueltas".

■ En ninguna de las anteriores decisiones, sin embargo, establecimos o sugerimos la regla de que en todo caso en que se interese el desalojo de un inquilino para dedicar el local de buena fe a su propio uso, sea indispensable el testimonio del propio interesado. Aun cuando es más deseable, que así sea, si el juzgador—como en el caso de autos—queda en su conciencia moralmente convencido de que existe en la parte actora la buena fe que requiere la ley, su conclusión, sostenida por los antecedentes y demás circunstancias a que dió consideración, debe merecer—en ausencia de

indicio que tienda a desvirtuar el valor de esa prueba—la misma deferencia que si su conclusión se hubiera basado en el propio testimonio de los demandantes.

*Procede la confirmación de la sentencia.*