RAFAEL RIVERA ESBRI, demandante y recurrido, *v.* PEDRO ARCHEVALD RODRÍGUEZ, demandado y recurrente.

*Número:* 12186. *Resuelto:* 29 de septiembre de 1961.

*Benicio Sánchez Castaño* y *R. Rivero Cervera,* abogados del recurrido; *Práxedes Alvarez Leandri* y *Rafael Hernández Matos,* abogados del recurrente.

Sala integrada por el Juez Asociado Señor Santana Becerra, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Por resolución dictada en 9 de septiembre de 1951, el Tribunal Superior, Sala de Ponce, declaró como únicos y universales herederos abintestato de doña Belén Esbri, fallecida en 16 de marzo de 1945, a su hermana de doble vínculo Angélica, y a sus sobrinos, el demandante Rafael Rivera-Esbri; Honoria, Belén y María Teresa, de apellidos Esbri-Fabery; Jesús Ramón, Zenaida Eustacia, Leonardo Humberto y Marina, de apellidos Esbri-Zaldo; y Diego Esbri-Bonilla. La heredera doña Angélica Esbri falleció veintiún meses después de su mencionada hermana Belén, y se declararon como herederos suyos a sus tres hijas María de los Angeles y Margarita Biaggi-Esbri y Deadina Bauzá-Esbri, y a sus dos nietos William y Eleonora Natividad Biaggi-Soto.

Rivera Esbri inició una acción en 18 de febrero de 1953 contra Pedro Archevald Rodríguez para retraer ciertas participaciones que éste había adquirido en dos inmuebles que formaban parte del caudal relicto al fallecimiento de doña Belén Esbri. Al efecto se alegó que:

"2. Por escritura número 64, sobre Cesión de Derechos y Acciones Hereditarias, otorgada en Ponce, Puerto Rico, el día 16 de octubre de 1952, ante el notario Don Práxedes Alvarez Leandri, los comuneros Honoria, Esbri Fabery, María Teresa, también conocida por Felícita Esbri Fabery, Jesús Ramón Esbri Zaldo y Marina Esbri Zaldo, vendieron al demandado Pedro Archevald Rodríguez, que es un extraño en la comunidad, las acciones y derechos que les correspondían en las dos fincas anteriormente descritas, por el precio total de mil doscientos cuarenta y seis dólares con sesenta y seis centavos ($1,246.66) ; o sea, doscientos ochenta y tres dólares con treinta y tres centavos para Honoria Esbri Fabery, doscientos ochenta y tres con treinta y tres para María Teresa, también conocida por Felícita Esbri Fabery, y ciento setenta dólares para cada uno de los restantes vendedores, Jesús Ramón, Zenaida Eustacia, Leonardo Humberto y Marina Esbri Zaldo.

"3. Por escritura número 75, sobre compraventa de condominio, otorgada en Ponce, P. R., el día 12 de diciembre de 1952,

ante el notario don Rafael Hernández Matos, los comuneros Doña Margarita Biaggi Esbri, Doña María de los Angeles Biaggi Esbri, y Doña Deadina Bauzá Esbri vendieron al demandado Pedro Archevald Rodríguez, que es un extraño en la comunidad, los condominios que les correspondían en las fincas anteriormente descritas, por el precio total de $600.00 o sea, $200.00 para cada una de ellas."

La demanda contiene además las siguientes alegaciones, que propiamente analizadas nos llevarán a determinar la verdadera naturaleza de la acción que se intentó proseguir: que el demandante Rivera Esbri era dueño de *un condominio* de una quinta parte en las dos fincas urbanas mencionadas; que los demás herederos a quienes se ha hecho referencia en el párrafo primero de esta opinión eran dueños de *determinados* condominios, con expresión de la cuota en proindiviso que a cada estirpe correspondía; que el demandante tuvo conocimiento en 10 de febrero de 1953 de las ventas efectuadas de los *condominios que les correspondían* en dichas fincas a los vendedores; que el demandado es "un extraño en *la comunidad*"; que se consigna una cantidad suficiente para cubrir el precio en que se han enajenado *"los condominios"* referidos en los párrafos segundo y tercero de la demanda que han sido transcritos precedentemente, así como los gastos que ocasione el otorgamiento de las escrituras de retracto a su favor, "subrogándose en el lugar del comprador con las mismas condiciones estipuladas en las respectivas escrituras en que se transmitieron al demandado los derechos de los *comuneros* que le vendieron sus participaciones". (Bastardillas nuestras.) Finalmente el demandante se obliga a no vender durante cuatro años *"los condominios"* que son objeto de la acción.

El demandado fue emplazado en 26 de febrero de 1953, y el día 5 de marzo presentó, como su primera alegación, una moción para desestimar alegando falta de jurisdicción sobre la persona y ausencia de hechos suficientes para constituir una causa de acción. Esta moción fue declarada sin lugar

en 22 de mayo. Habiendo expirado el término de diez días que se le concedió para contestar, el demandado solicitó en 19 de junio que el mismo se le extendiera por veinte días. No es hasta el día 24 de julio, o sea, cinco meses después de la iniciación de la demanda, que se radica la contestación, en la cual se alegan, entre otras, las siguientes dos defensas especiales: 1. falta de jurisdicción y/o competencia del tribunal, por no exceder de $2,500 los valores o cantidades envueltas en la acción, y corresponder ésta exclusivamente al Tribunal de Distrito; y 2. prescripción de la acción a tenor de lo dispuesto en los artículos 1020 y 1414 del Código Civil.

El tribunal de instancia determinó, como cuestión de hecho, que el demandante Rivera Esbri tuvo conocimiento de las ventas a que alude la demanda el día 3 de febrero de 1953, o sea, quince días antes de la fecha de su radicación. Concluyó que se trataba de un retracto de coherederos, y no de copropietarios, y, por tanto, desestimó la defensa de prescripción. No hizo pronunciamiento alguno en cuanto a la defensa de falta de jurisdicción.

Contra la sentencia dictada se interpuso recurso de apelación.

### Impugnación de la Competencia del Tribunal

Nos pide el apelante que anulemos la sentencia dictada por el fundamento de que el tribunal a quo carecía de jurisdicción sobre la materia, ya que el valor de los condominios objeto de la acción de retracto no excedía de $2,500, sin incluir intereses, costas y honorarios de abogado, sec. 13 de la Ley de la Judicatura de 1952, Núm. 11 de 24 de julio de 1952, pág. 31 (4 L.P.R.A. sec. 121), siendo por tanto el Tribunal de Distrito el único competente—por razón de la cuantía envuelta—para entender en el asunto.

En las acciones de retracto, la cuantía envuelta a los fines de determinar la sección del Tribunal de Primera Instancia que debe propiamente conocer del asunto se fija tomando en consideración el valor de la cosa cuya retracción se

intenta, *Fermaint* v. *Pizá*, 60 D.P.R. 458 (1942). En el presente caso el importe del precio de venta de los condominios era inferior a $2,500, y por tanto, correspondía al Tribunal de Distrito el conocimiento de la acción. Sin embargo, hemos reiterado que estas distinciones "jurisdiccionales" no causan la desestimación de la acción entablada, pues "no se desestimará ningún caso fundado en haberse sometido a una sección sin jurisdicción o autoridad o a una sala de un tribunal sin competencia para ello". Sección 10 de la Ley de la Judicatura, supra, 4 L.P.R.A. sec. 62; *Rodríguez* v. *Registrador*, 75 D.P.R. 712 (1953); *Fernández* v. *Tribunal de Distrito*, 76 D.P.R. 364 (1954); *Cooperativa Cafeteros de Puerto Rico* v. *Colón*, 76 D.P.R. 473 (1954); *Suliveres* v. *Arjona*, 76 D.P.R. 917 (1954); *Fernández & Hno.* v. *Pérez*, 79 D.P.R. 244 (1956): *Valentín* v. *Figueroa*, 79 D.P.R. 444 (1956); *Ramírez* v. *Ramírez*, 80 D.P.R. 518 (1958).

■ Sostiene sin embargo, el apelante que, como en su contestación alegó como defensa especial la falta de jurisdicción, no puede imputársele convenio o anuencia tácita alguna para que se continuara tramitando la acción ante el Tribunal Superior. No le asiste la razón. En primer lugar, esta cuestión no se levantó mediante la oportuna moción de traslado, *Ramírez* v. *Ramírez*, 80 D.P.R. 518 (1958); *Fernández & Hno.* v. *Pérez*, 79 D.P.R. 244 (1956); sino que, aun cuando se solicitó la desestimación de la demanda, tal súplica se basó en otros motivos o fundamentos, o sea, la falta de jurisdicción sobre la persona por defectos en el diligenciamiento del emplazamiento y la omisión de alegar hechos constitutivos de causa de acción. En segundo lugar, no basta con que se levante la cuestión de falta de "jurisdicción" o competencia, sino que es necesario que se gestione activamente por el demandado que la causa se remita a la sección o sala que corresponda, según sea el caso. Parafraseando de la opinión en *Fernández* v. *Registrador*, 75 D.P.R. 712 (1953), la anuencia tácita se manifiesta a través de la conducta o inacción de la parte al no gestionar activamente, teniendo oportunidad

para ello, que el pleito se tramite en la sección o sala apropiada. Cuando un litigante ha sido diligente y consecuente en su planteamiento, hemos protegido su derecho a que el caso se ventile en el tribunal competente recurriendo a la expedición de un auto inhibitorio, *Fernández* v. *Tribunal de Distrito*, 76 D.P.R. 364 (1954).

### Prescripción de la Acción

■■■ Según hemos expuesto anteriormente, el tribunal a quo determinó que el demandante Rivera Esbri tuvo conocimiento personal el día 3 de febrero de 1953 de las ventas a favor del demandado. Como el pleito de retracto se inició el día 18 siguiente, la acción se dedujo a los 15 días desde que el retrayente tuvo conocimiento de las ventas. De ahí que revista especial importancia la determinación de si se trata de un retracto entre coherederos, para lo cual se concede un término de un mes,(¹) o un retracto entre comuneros, que debe ejercitarse dentro de nueve días.(²)

(¹) El artículo 1020 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 2886, dispone que:

"Si alguno de los herederos vendiere a un extraño su derecho hereditario antes de la partición, podrán todos o cualquiera de los coherederos subrogarse en lugar del comprador, reembolsándole el precio de la compra, con tal que lo verifiquen en término de un mes a contar desde que esto se les haga saber."

A pesar de la redacción transcrita que parece indicar que se requiere una notificación al coheredero demandante para que comience a contar el término de treinta días, en *Olivieri* v. *Biaggi*, 17 D.P.R. 704 (1911) resolvimos que dicho término empieza a correr desde que el coheredero tiene conocimiento de la venta, bien lo reciba directamente del coheredero vendedor, o de cualquier otra persona y por cualquier otro conducto. En el mismo sentido se pronuncia el Tribunal Supremo de España en sus sentencias de 26 de noviembre de 1900 (90 Jurisp. Civil, pág. 727) y 3 de febrero de 1915 (132 Jurisp. Civil, pág. 321).

(²) El artículo 1414 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3924, dispone que:

"No podrá ejercitarse el derecho de retracto legal sino dentro de nueve días contados desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta."

En cuanto al término de nueve días, véanse, *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961); *Gómez* v. *Collazo*, 67 D.P.R. 485 (1947); *Rosaly* v. *Ríos*, 63 D.P.R. 836 (1944); *Felici* v. *Ribas et al.*, 11 D.P.R. 539 (1906); De Diego, F., *Consulta sobre el Derecho de Retracto*, Revista de Derecho Privado, T. VI, p. 335, 338–341.

■ Debemos establecer previamente, aunque en forma breve, la naturaleza de ambos retractos. Prácticamente existe unanimidad(³) en la Doctrina al efecto de que la subroga-

(³) La única voz disidente del criterio enunciado que hemos encontrado es la del Registrador José Oliver Martí, que en un interesante artículo titulado "Consideraciones y supuesto práctico en relación con el artículo 1067 del Código Civil", publicado en la Revista General de Derecho, año 3º, número 36, págs. 466–472 (Septiembre de 1947), expone las diferencias fundamentales que a su juicio existen entre ambos retractos, y que por la discusión interesante que se hace, nos permitimos reproducir:

"Generalmente los comentaristas y autores de Derecho, así como algunas sentencias del Tribunal Supremo, suelen equipararla al retracto de comuneros, como una especie o subespecie dicen del mismo. Sin negar que, efectivamente, existen analogías (indivisión de la cosa y del derecho hereditario), estimamos que las separan profundas y esenciales diferencias:

"a) El retracto legal supone la proindivisión de algo real, tangible, determinado, algo que se nos presenta con nitidez de contornos, con precisión de límites, que hiere nuestros sentidos corporales, la cosa, en fin. En cambio, en la subrogación que estudiamos la indivisión afecta a lo inconsútil, impreciso, indeterminado, abstracto, una especie de nebulosa que no se sabe en qué, cómo, ni siquiera si cristalizará; una cualidad: la de heredero.

"b) En el retracto de comuneros, como en todos los demás, la efectividad que con ellos se persigue y que sirvió de móvil al legislador para crearlos es inmediata, de presente; la indivisión de la cosa se aminora o desaparece, con lo que, a su mismo tenor, también se aminoran o desaparecen los inconvenientes que consigo lleva la propiedad comunal en su administración y posible y conveniente enajenación. El minifundio también se corrige o desaparece, y otro tanto podíamos decir de los demás retractos. Por el contrario, en la subrogación que nos ocupa no hay efectividad momentánea, y posiblemente ni remota; se podrá refundir el derecho hereditario en menos manos; es decir, esa cualidad de heredero la ostentarán menos personas, pero nada práctico se consigue con ello, ya que es algo sutil y abstracto, simple facultad de aceptar o repudiar, y como tal facultad, ¿qué más da que sus titulares sean pocos o muchos, coherederos o no, familiares o extraños, cuando en fin de cuentas la herencia resulte negativa? Y aun en el supuesto de resultar positiva, ¿qué inconvenientes se evitan o ventajas se obtienen por que los lotes hereditarios sean más o menos cuando los bienes, por razón de su naturaleza, sean perfectamente divisibles (metálico o signos representativos) y no resulten pro indivisos ni divisiones materiales de fincas formando otras nuevas? Y aun admitido ésta, ¿qué necesidad hay de crear un nuevo retracto, siendo así que esos pro indivisos o divisiones materiales de bienes en su día desaparecerán o se amortiguarán cuando los nuevos propietarios—antiguos coherederos—vendan o den en pago sus partes indivisas o nuevas fincas, ejercitando los condueños o colindantes los respectivos retractos? ¿Se puede racionalmente presumir que el legislador creara un nuevo retracto que, como todos—eso sí—de

ción sucesoria que consagra el artículo 1020 del Código, también llamada retracto de coherederos, es una especie o subespecie del retracto de comuneros, pues en ambos se trata de una situación de indivisión, sólo que el primero presenta una variante por razón del objeto sobre el cual recae la comunidad. Manresa, *Comentarios al Código Civil Español*, ed. 1943, t. VII, pág. 716; Scaevola, *Código Civil*, ed. 1954, t. XVIII, pág. 667; Castán *Derecho Civil Español, Común y Foral*, ed. 1952, t. 4, pág. 137; Puig Brutau, *Fundamentos de Derecho Civil*, ed. 1953, t. III, pág. 604; Sánchez Román, *Es-*

---

presente origina cierto malestar e intranquilidad, en previsión de tan hipotéticas y remotas ventajas que, posible y hasta probablemente, no se darán por no darse los supuestos que las motiven, y caso de darse pueden conseguirse mediante los retractos legales que con ese fin fueron creados? Queremos decir que para eso no necesitaba la ley crear la doctrina del artículo 1.067; ya lo tenía previsto y regulado en el articulado de los retractos legales, singularmente de comuneros y colindantes.

"c) El retracto, además, se creó en atención y beneficio de la cosa; diremos mejor, de sus titulares, ya que las cosas no pueden ser objeto de atenciones y beneficios; pero queremos significar que esa atención y beneficio lo recibe el titular a través de la cosa; mejorando ésta se beneficia aquél; donde va la cosa, va el retracto: en tanto en cuanto se es titular, se beneficia; deja de serlo, deja de beneficiarse. En suma, el retracto es un derecho real. Mientras que en la subrogación del artículo 1.067 no ocurre eso, ahí no hay cosas, no hay nada de orden material que sirva de nervio, de punto de apoyo, como ocurre en el retracto de comuneros; *es la cualidad de heredero con relación al que no la ostenta la que motiva la subrogación;* pero esa cualidad es puramente personal, nace de la ley o de la voluntad del testador y se otorga por motivos familiares, de otra índole o ambas a la vez, pero siempre con un fondo de afecto, consideración, caridad, altruismo, generosidad, pura simpatía, algo, en fin, netamente sentimental y humano; por esa razón dijimos en un principio que en la redacción de ese artículo no pudieron influir razones de índole material, sino en ínfima proporción, aunque a primera vista así lo parezca, sino la consideración de que el legislador, al otorgar medios para evitar que el derecho hereditario saliera de los coherederos, tuvo en cuenta los trastornos y violencias que humana y naturalmente podía llevar consigo la intromisión de un titular extraño en las distintas operaciones que la aceptación de la herencia lleva consigo, acentuando los rozamientos y consiguientes desgastes que normalmente lleva aparejada. Estas diferencias fundamentales que acabamos de consignar nos llevan a la necesaria conclusión de que la subrogación que estudiamos *no puede ser una especie o subespecie de retracto legal de comuneros;* éste, como todos, será subrogación, pero **no** todas las subrogaciones, retractos; el retracto es la especie; la subrogación, **el género."** (Bastardillas nuestras.)

*tudios de Derecho Civil*, ed. 1910, t. 6, vol. 3º, pág. 2081; Velázquez, *Teoría de Derecho Sucesorio Puertorriqueña*, ed. 1961, pág. 112; Badenes Gasset, *La Preferencia Adquisitiva en el Derecho Español*, Ed. Bosch, 1958, pág. 104; González Jerónimo, *La Comunidad Hereditaria*, Revista Crítica de Derecho Inmobiliario, t. 7, pág. 174 (1931). Es pues, en el objeto de la indivisión, que reside la diferencia principal entre ambos supuestos: en la subrogación sucesoria, el objeto es la participación o cuota del coheredero en *todos* los bienes que forman parte del caudal; en el retracto de comuneros, el objeto es la participación determinada o condominio de comunero en el bien poseído en común proindiviso, *Fuertes* v. *Arzón*, 81 D.P.R. 491 (1959).

Colin y Capitant, exponen a nuestro juicio, en forma más completa las razones que justifican la institución del retracto sucesorio, aun reconociendo que la misma es contraria a la seguridad de las transacciones(4) y a la regla de la espiritualidad que en materia de contratación permea nuestro derecho. Dicen así:(5)

"1. La partición es una operación familiar que, por traer a la masa todos los papeles del difunto, puede descubrir secretos de familia, su situación, sus negocios, de lo que sería enojoso que se enterasen los extraños.

"2. En las particiones entre parientes próximos es con frecuencia difícil obtener el acuerdo necesario para realizar amigablemente la partición, que es la forma más conveniente para todos. ¿No sería esto todavía más difícil si se admitiera en ese acto la intervención de extraños, animados de espíritu de especulación?

---

(4) En la luminosa opinión sobre la materia de retractos emitida en *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961), se califica el derecho del comprador como "un título inestable y revocable" incapaz de transmitir "un título irrevocable".

(5) Curso Elemental de Derecho Civil, 3a. ed. (1955), t. 7º, pág. 302. En el mismo sentido se pronuncia el Profesor Velázquez, *op. cit.*, pág. 112, cuando—citando a Planiol y Ripert—dice en forma más concisa que "es el medio organizado por la ley para circunscribir el estado de indivisión y las operaciones de la partición al círculo de los coherederos".

"3. Finalmente, la exclusión de las operaciones de partición de los extraños cesionarios de derechos sucesorios, es para los coherederos un medio de asegurar en la familia la conservación de los bienes, especialmente los inmuebles hereditarios. Por este último resultado el retracto sucesorio se enlaza con la institución más antigua, pero hoy en desuso, del retracto familiar o troncal."

 Se deduce de lo expuesto que, aun concurriendo la comunidad por transmisión hereditaria, cuando el coheredero meramente vende su participación indivisa en uno o varios bienes determinados de la herencia, el recurso que asiste a su coheredero retrayente es el retracto de comuneros. Para que tenga lugar el retracto sucesorio es preciso que el objeto de la transmisión haya sido la cuota o participación hereditaria del heredero en el caudal, pues como hemos apuntado, la razón que informa el precepto es evitar el advenimiento de un extraño a las operaciones de partición. De ahí que el precepto legal expresamente disponga que puede recurrirse a la subrogación sucesoria únicamente cuando la venta haya ocurrido *antes de la* partición. Scaevola, *op. cit.*, pág. 667, indica que este derecho de retraer subsiste "mientras dure la comunidad que hace cesar la partición", y alude a fallos de la jurisprudencia francesa en que se declara que dicho retracto "no debe ser admitido cuando la cesión no comprendió el conjunto de los derechos sucesorios del cedente, sino solamente una cuota-parte en uno o en muchos inmuebles determinados" (pág. 764). Finalmente expresa que cuando se trata de "realizada una venta de cosas determinadas de la herencia, [ello] obsta al ejercicio del derecho de retracto sucesorio." (pág. 675). El Tribunal Supremo de España en Sentencia de 12 de febrero de 1904 (97 Jurisp. Civil, pág. 331) expresamente manifiesta que el artículo 1067 del Código Civil Español, correspondiente al 1020 de Puerto Rico, sólo se aplica cuando se trata de un derecho sucesorio indeterminado. Véase además, Calvo y Camina, *Contrato de Coherederos*, Revista de Derecho Privado, t. II, pág. 176 (1915).

 Un examen de las alegaciones reseñadas previamente y de los hechos según surgen de los autos nos han convencido de que en el presente caso los coherederos cedentes vendieron al demandado apelante, no su cuota indeterminada en todos los bienes del caudal, sino una participación específica en dos inmuebles de la herencia. Obsérvese la continua referencia a cuotas determinadas en los bienes, (⁶) y añádase a esto que la prueba demostró que el caudal de doña Belén Esbri comprendía, cuando menos, otro bien inmueble—un solar pequeño situado en el sitio Cantera de Ponce (T. E., pág. 25), y podrá ratificarse el criterio expuesto. Además, el propio demandante caracterizó desde sus inicios la acción presentada como una de retracto entre comuneros: sus alegaciones son consistentes en su referencia a la "comunidad" y los "comuneros"; se contrae expresamente el compromiso de no disponer de los condominios retraídos hasta transcurridos cuatro años, alegación que caracteriza y únicamente se exige en esta clase de retractos, *Noble* v. *Rodríguez*, 69 D.P.R. 482 (1949); *Martínez* v. *Pirallo*, 61 D.P.R. 91 (1942); *Vellón* v. *Central Pasto Viejo*, 34 D.P.R. 233 (1925); y se inicia la acción dentro de los nueve días de la fecha en que, según el demandante, tuvo conocimiento de las ventas, después de evidenciarse una gran preocupación por sus abogados sobre el transcurso de dicho término (T. E., pág. 188). Sin embargo, todas estas alegaciones cuidadosamente formuladas y los hechos a que nos hemos referido se vienen abajo cuando el tribunal de instancia resuelve que el demandante tuvo conocimiento de las ventas—

---

(⁶) La escritura de venta de condominios por los hermanos Esbri-Zaldo se intituló "Cesión de Derechos y Acciones Hereditarias". Sin embargo, esto es compatible con que la cesión se refiriera a sus derechos sobre determinados bienes, hecho que se corrobora con la lectura del párrafo segundo de la demanda. Correspondía a la parte demandante demostrar que esta cesión era en efecto una venta de la cuota de los herederos cedentes en la herencia de la causante, y no lo hicieron. Tampoco se alegó, y hasta donde hemos podido examinar, ni se probó, que no se hubiese efectuado la partición.

. La segunda escritura se intituló sobre Venta de Condominio.

punto de partida para deducir el término para la iniciación de la acción—no en la fecha por él alegada (10 de febrero), sino una semana antes (3 de febrero).

Concluimos, pues, que en el presente caso se trata de un retracto de comuneros, y habiéndose interpuesto después de transcurrido el término de nueve días desde que el demandante tuvo conocimiento de las ventas, no puede prosperar. Este resultado nos releva de considerar las otras cuestiones planteadas por el apelante.

*Se dictará sentencia revocando la dictada por el Tribunal Superior, Sala de Ponce, en 4 de octubre de 1956.*