ODETTE GONZÁLEZ DE SALAS, demandante y recurrente, *v.* ROSA MARÍA CHARNECO VDA. DE GONZÁLEZ RIVERA, demandada y recurrida.

*Número:* R-68-68      *Resuelto:* 29 de enero de 1971

*Aurelio Roque Delgado,* abogado de la recurrente; *Raúl Matos, Carlos N. Souffront* y *Adelaida V. Souffront,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

Nos toca decidir en este caso si en el contexto del Art. 1020 del Código Civil de Puerto Rico, que consagra el retracto de coherederos, la viuda es una *extraña* en la herencia de su fenecido esposo.

José Manuel González Rivera falleció el 17 de abril de 1954 habiendo otorgado testamento. Fue casado dos veces. En el primer matrimonio tuvo dos hijos, José Clemente y Odette González de Salas, aquí recurrente.

En el segundo matrimonio con Rosa María Charneco, aquí recurrida, González Rivera procreó tres hijos de nombre Ana María, José Manuel y Sandra María González Charneco.

El 23 de enero de 1967 el Tribunal Superior, Sala de Ponce, dictó sentencia en una acción de filiación declarando a Nilsa González Otero, hija de José Manuel González Rivera, con todos los derechos a los bienes relictos de éste.

Tres días antes de haberse dictado la sentencia, Nilsa González Otero, demandante en el pleito de filiación, la viuda

Rosa María Charneco y todos los hijos habidos en matrimonio, con excepción de la recurrente Odette González de Salas, acordaron mediante escritura pública número uno de esa misma fecha, ante el notario Nazario Lugo Silvagnoli, una transacción del aspecto económico del pleito de filiación, excluyendo su fase filiatoria, mediante la cual Nilsa González Otero cedió cualquier derecho, título, acción, interés o participación que pudiera corresponderle en las herencias de José Manuel González Rivera y Rosa Ana Rivera Viuda de González, [1] a favor de Rosa María Charneco y los hijos del primer y segundo matrimonio de José Manuel González Rivera, con excepción de Odette González de Salas, en proporción de una tercera (1/3) parte para la demandada Rosa María Charneco y el resto por partes iguales a los demás. Se le pagó a la vendedora sesenta mil dólares ($60,000.00) de los cuales Doña Rosa María Charneco pagó veinte mil dólares ($20,000.00).

El 15 de febrero de 1967, Odette González de Salas, única hija que no compareció en la escritura, inició acción de retracto hereditario encaminada a retraer los derechos adquiridos de Nilsa González Otero por la viuda de su padre, Doña Rosa María Charneco Viuda de González Rivera, aquí recurrida, en el referido contrato de transacción interesando subrogarse en el lugar de la demandada, y ofreciendo reembolsar los gastos que le correspondieron a ésta por el otorgamiento de la referida escritura así como cualquier otro gasto necesario y útil, en adición a los de la escritura de traspaso a ella de los derechos hereditarios envueltos. Junto con la

---

[1] Rosa Ana Rivera Viuda de González era la madre de José Manuel González Rivera y abuela paterna de la recurrente Odette González de Salas. Falleció el 18 de agosto de 1957. La acción de retracto instada por la demandante en cuanto a los derechos adquiridos por Doña Rosa María Charneco en la herencia de su suegra Rosa Ana Rivera Viuda de González fue declarada con lugar por el tribunal sentenciador por ser la demandada una "extraña" en la herencia de su suegra. Dicha determinación es ya firme y no es considerada en este recurso.

demanda de retracto consignó en la secretaría del tribunal de instancia la suma de veinte mil dólares ($20,000.00) a disposición y para beneficio de la demandada para cubrir el precio de adquisición y así retraer la tercera (1/3) parte de los derechos hereditarios vendidos por Nilsa González Otero a la demandada Rosa María Charneco.

La recurrida es la viuda del causante, padre de la recurrente. En el testamento otorgado por él, en la cláusula SÉPTIMA, instituyó legataria en el usufructo del tercio de bienes de libre disposición, a su esposa Rosa María Charneco, legando la nuda propiedad de dicho tercio de bienes de libre disposición a sus tres hijos habidos en su segundo matrimonio, Ana María, Sandra María y José Manuel. En la cláusula OCTAVA instituyó por sus únicos y universales herederos en el remanente de todos sus bienes, derechos y acciones, o sea, en los dos tercios destinados a legítima, a sus cinco hijos nombrados Odette González Ortiz, José Clemente González Ortiz, Ana María González Charneco, Sandra María González Charneco y José Manuel González Charneco, por partes iguales y sin perjuicio de la cuota usufructuaria que a favor de su esposa Doña Rosa María Charneco determinaba la ley. (²)

---

(²) "SEPTIMO:—Por la presente el testador compareciente Don José Manuel González Rivera, en prueba del cariño que profesa a su esposa, Doña Rosa María Charneco González, LE LEGA el usufructo del tercio de todos sus bienes presentes y futuros de libre disposición, y la nuda propiedad de dicho tercio de bienes de libre disposición, la LEGA, por partes iguales, a sus tres hijos legítimos, llamados Ana María, José Manuel y Sandra María, todos de apellidos González Charneco, habidos en su matrimonio con su actual esposa, Doña Rosa María Charneco González.

"OCTAVO:—Asimismo el testador exponente Don José Manuel González Rivera, instituye, nombra y elige por sus únicos y universales herederos en el remanente de todos sus bienes, derechos y acciones presentes y futuros, o sea, en las dos terceras partes destinada a legítima forzosa, a sus cinco hijos legítimos, nombrados Odette González Ortiz, José Clemente González Ortiz, Ana María González Charneco, José Manuel González Charneco y Sandra María González Charneco, por partes iguales,

La demanda objeto de la sentencia recurrida descansa en el Art. 1020 del Código Civil, 31 L.P.R.A. sec. 2886. Dicho artículo crea la acción de retracto sucesorio, también conocida como retracto de coheredero. Dicho artículo preceptúa:

"Si alguno de los herederos vendiese a un extraño su derecho hereditario antes de la partición, podrán todos o cualquiera de los coherederos subrogarse en lugar del comprador, reembolsándole el precio de la compra, con tal que lo verifiquen en término de un mes desde que esto se les haga saber."

Para la solución de este caso es preciso dejar sentado algunas premisas básicas en torno a la naturaleza de esta acción sobre las cuales no existe discrepancia.

■ Primero, su finalidad. Hemos señalado en ocasiones anteriores que el fin de la acción de retracto de herederos es evitar el advenimiento de un extraño a las operaciones de partición. *Lugo Ortiz* v. *Ferrer*, 85 D.P.R. 862, 866 (1962). Ello se deduce, indudablemente, del propio texto del Art. 1020. En *Rivera Esbri* v. *Archevald*, 83 D.P.R. 604, 614 (1961), nos expresamos así:

"Colin y Capitant, exponen a nuestro juicio, en forma más completa las razones que justifican la institución del retracto sucesorio, aún reconociendo que la misma es contraria a la seguridad de las transacciones y a la regla de la espiritualidad que en materia de contratación permea nuestro derecho. Dicen así: '1. La partición es una operación familiar que, por traer a la mesa todos los papeles del difunto, puede descubrir secretos de familia, su situación, sus negocios, de lo que sería enojoso que se enterasen los extraños. '2. En las particiones entre parientes próximos es con frecuencia difícil obtener el acuerdo necesario para realizar amigablemente la partición, que es la forma más conveniente para todos. ¿No sería esto todavía más difícil si se admitiera en ese acto la intervención de extraños,

sin perjuicio de la cuota usufructuaria que a favor de su actual esposa, Doña Rosa María Charneco González determina la ley, siendo la intención del testador que sus dichos legatarios y herederos, hereden sus bienes en la forma ya expresada y gocen y disfruten los mismos en recuerdo suyo, sin limitación alguna, y con la bendición de Dios y del testador."

animados de espíritu de especulación? '3. Finalmente, la exclusión de las operaciones de partición de los extraños cesionarios de derechos sucesorios, es para los coherederos un medio de asegurar en la familia la conservación de los bienes, especialmente los inmuebles hereditarios. Por este último resultado el retracto sucesorio se enlaza con la institución más antigua, pero hoy en desuso, del retracto familiar o troncal.' "

En igual sentido se pronuncia el Profesor Guaroa Velázquez, hoy fallecido, en su obra *Teoría del Derecho Sucesorio Puertorriqueño* [3] al decir:

"Conforme apuntan Planiol y Ripert el retracto sucesoral es el medio organizado por la ley para circunscribir el estado de indivisión y las operaciones de partición al círculo de los coherederos, descartando a los adquirentes de los derechos indivisos cuando fueren extraños a la trasmisión hereditaria. Con arreglo a esta institución se asegura, en primer lugar, que los bienes se conserven en familia y que no se fraccione la propiedad; en segundo lugar, se evita que personas se entrometan en los asuntos privados de la familia; y en último lugar, se previene que surjan dificultades en la partición, provocados por personas movidas por espíritu de lucro."

Otra autoridad, el Tribunal Supremo de España, en su Sentencia del 25 de abril de 1964, [4] considera que el fin de la acción de retracto de coherederos prevista en el Art. 1067 del Código Civil Español, equivalente al Art. 1020 del nuestro, es de ". . . conservar en la herencia la cuota vendida y de eliminar, mediante la subrogación en ella, una titularidad ajena al complejo sucesoral inicialmente creado por el testador o por la ley." [5]

Segundo. El derecho de retracto es de naturaleza privilegiada, pues pone restricciones a la libre contratación. En *Vellón v. Central Pasto Viejo*, 34 D.P.R. 233, 240 (1925),

---

[3] Segunda edición revisada, Equity Publishing Corporation, pág. 102 (1968).

[4] Aranzadi, *Repertorio de Jurisprudencia*, número 1982 (1964).

[5] *Jurisprudencia Civil*, Tomo 112, número 59.

consideramos que el derecho de retracto de comuneros autorizado por el Art. 1412 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3922, es en sí mismo contrario al principio de la libre contratación y que las condiciones requeridas para su ejercicio deben cumplirse estrictamente. En *Rivera Esbri* v. *Archevald* (supra, a la pág. 613), aludimos a la doctrina, prácticamente unánime, al efecto de que la subrogación sucesoria que consagra el Art. 1020 del Código "es una especie del retracto de comuneros, pues en ambos se trata de una situación de indivisión, sólo que el primero presenta una variante por razón del objeto sobre el cual recae la comunidad." Nos parece relevante, pues, para la solución del presente recurso, la norma sentada en *Zalduondo* v. *Iturregui*, 83 D.P.R. 1, 19–20 (1961), sobre la materia de retracto, al efecto de que:

"... [el] retracto, por su naturaleza privilegiada, limitativa de la facultad dispositiva del comprador y que algunas veces se considera como un instituto perturbador de la libre contratación, no es un derecho absoluto que pueda desligarse de su ejercicio. ..."

El Tribunal Supremo de España tiene declarado que dado su carácter la acción de retracto sucesorio más debe restringirse que ampliarse.([6]) Sostenemos que tanto en su aspecto *sustantivo* como en su *ejercicio* hay que atenerse estrictamente a la letra del precepto que crea esta acción especial para hacerla efectiva.

Ya hemos visto que el fin evidente del retracto sucesorio es circunscribir el estado de indivisión y las operaciones de partición al círculo de coherederos. Ello no es objeto de discusión. Tampoco es objeto de controversia entre los co-

---

([6]) Sentencia del 5 de noviembre de 1908. Manresa, sin referirse a esta sentencia, trata, con toda propiedad a nuestro juicio, el derecho de retracto sucesoral como uno "excepcional" y, por tanto, de "interpretación restrictiva". T. VII, *Comentarios al Código Civil Español*, pág. 809, Séptima Edición Revisada (1955).

mentaristas españoles la doctrina del Tribunal Supremo de España[7] que proclama que la palabra *extraño* está usada en el artículo del Código Civil Español, equivalente al Art. 1020 del nuestro, por oposición a partícipe en la cosa común y que es persona extraña todo el que no sea heredero. Manresa apunta algunos ejemplos: un hijo desheredado, el padre del difunto, cuando la herencia corresponde a los hijos, el marido de una heredera, los legatarios, acreedores de la sucesión, etc., todos son personas extrañas a los efectos de este artículo. Acto seguido, se pregunta el autor:

"Si la venta se hace al cónyuge viudo, ¿pueden los coherederos intentar el retracto? El cónyuge viudo es un heredero forzoso; mientras no deje de serlo no puede considerársele una persona extraña; cualquiera que sea la naturaleza del derecho que se le concede, la letra de la ley no consiente otra interpretación."[8]

La cuestión no es nueva en esta jurisdicción. Nuestra jurisprudencia ha reconocido al cónyuge viudo su condición de heredero. Así en *Luce & Co.* v. *Cianchini*, 76 D.P.R. 165, 172–173 (1954), seguido en *Vda. de Sambolín* v. *Registrador*, 94 D.P.R. 320, 324 (1967), nos expresamos así:

"Sabemos que el usufructo vidual es la legítima, 14 Scaevola, Código Civil, 712, que la ley separa para el cónyuge viudo, quien es un heredero forzoso. Artículo 735 en relación con el 736, inciso 3 del Código Civil (Ed. 1930). Sobre esa legítima no puede el testador imponer carga ni condición alguna. Artículo 741; 5 Valverde, Tratado de Derecho Civil Español, 274; 6 Manresa, ob. cit., 418 y 602. Por lo tanto, una disposición del testador al efecto de que el usufructo legal de su cónyuge viudo estaría afecto a una condición resolutoria caso de ésta contraer segundas nupcias, se tendría por no puesta, por ser contraria a la ley según expresada en el citado Artículo 741. Artículo 721; 6 Manresa, ob. cit., 297; 14 Scaevola, ob. cit.,

---

[7] Sentencia del 7 de febrero de 1944, *Jurisprudencia Civil*, Tomo V. número 35.

[8] 7 Manresa, *ob. cit.*, pág. 812.

676 y 808. Una disposición a ese efecto significaría que el usufructo legal se extinguiría de cumplirse la condición resolutoria. Artículo 441, inciso 2. Sin embargo, como dice Manresa, ob. cit., Tomo 6, pág. 609, dicho inciso es inaplicable al usufructo vidual toda vez que '[s]iendo vitalicio el usufructo concedido al viudo, no hay más plazo ni *condición* que la vida del usufructuario . . .' (Bastardillas nuestras). 'La porción legítima,—dice el mismo comentarista, ob. y tomo citados, pág. 292—se arranca del patrimonio de su dueño, deja de pertenecer a éste: puede gozar mas no puede disponer. Los derechos del testador sobre ella, o sobre el derecho en que la legítima consista, en cuanto al poder de disposición, quedan igualados a los de un extraño; no puede disponer, luego *no puede gravar, limitar ni modificar en modo alguno ese derecho. . . .'* (Bastardillas nuestras.) Al mismo efecto señala Scaevola, ob. citada, Tomo 14, pág. 808, que el usufructo vidual 'está . . . exento de toda condición, porque su carácter lo hace invulnerable a todo gravamen.' "

■ En el caso de *Cianchini* (escolio 5, pág. 172) reconocimos que este punto ha sido objeto de discrepancia entre los comentaristas optando el Tribunal por seguir la doctrina y la jurisprudencia española que afirman el carácter de heredero forzoso del cónyuge viudo.([9]) Reafirmamos ese criterio nuevamente. Atendiendo el texto del Art. 736 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 2362, hay que considerar

---

([9]) Sosteniendo la tesis de que el viudo es heredero en la sucesión de su fenecido esposo figuran distinguidos comentaristas como Manresa, Vol. 7; *ob. cit.*, pág. 812; J. Santamaría, *Comentarios al Código Civil*, Vol. I, págs. 817–819; Bonet Ramón, *Compendio de Derecho Civil*, Vol. V, págs. 617–620; Sánchez Román, *Derecho Civil*, Tomo VI, pág. 2084; Valverde, *Tratado de Derecho Civil Español*, Vol. V, pág. 246; Francisco Espinar Lafuente, *La Herencia Legal y el Testamento*, pág. 422. En oposición a estos comentaristas otros no menos distinguidos comentaristas sostienen que el viudo no es heredero; entre ellos, Colín y Capitant, *Curso Elemental de Derecho Civil*, VIII, Madrid 1928, pág. 493; Borell y Soler, *Derecho Civil Español*, Tomo V, pág. 291; Roberto de Ruggiero, *Instituciones de Derecho Civil*, Tomo II, Vol. 2, págs. 437–438; Guaroa Velázquez, *Derecho Sucesorio Puertorriqueño*, sec. 118, pág. 103.

Para un análisis completo de esta polémica doctrinal, véanse: Puig Peña, *Derecho Civil Español*, Tomo V, Vol. II, págs. 355 *et seq.*; Diego Espín, *Derecho Civil Español*, Tomo V., págs. 312 *et seq.*; Bonet Ramón, *Compendio de Derecho Civil*, Tomo V, págs. 617 *et seq.*

al cónyuge viudo como heredero pues así se incluye y nombra en el mismo. (10) Considerando el carácter excepcional que tiene el derecho de retracto sucesoral, no debemos ampliarlo para alcanzar al cónyuge viudo. Este no es un extraño en el complejo sucesoral y sí un heredero aunque este carácter sea sólo en usufructo. No siéndolo, no procede la acción instada contra la demandada recurrida encaminada a retraer derechos adquiridos por ésta en la herencia de su fenecido esposo José Manuel González Rivera. Como nos recuerda Bonet Ramón, *Compendio de Derecho Civil*, Tomo V, pág. 613 (1965):

"El matrimonio—como escribe—De Diego—es el origen de la familia, el brote y fundamento de ella; de los cónyuges, si se dice que no son parientes, es porque constituyen una unidad superior, tanta y tan intensa es la comunidad de su vida y la identificación de sus afectos: 'erunt duo in carne una'. Por eso no es posible concebir que los que en vida se fundieron en uno para engendrar y constituir una familia, corriendo la misma suerte y sirviendo a un común destino, queden extrañados el uno al otro en la hora de la muerte."

. *Se confirmará la sentencia recurrida.*

El Juez Presidente, Señor Negrón Fernández, y el Juez Asociado Señor Santana Becerra no intervinieron.

---

(10) "Son herederos forzosos", dice este artículo:

"1. Los hijos descendientes legítimos respecto de sus padres y ascendientes legítimos, y los hijos naturales legalmente reconocidos respecto de sus padres y ascendientes naturales o legítimos.

2. A falta de los anteriores, los padres y ascendientes legítimos respecto de sus hijos y descendientes legítimos.

3. El viudo o viuda en la forma o medida que establecen las secciones 2411, 2412, 2413 y 2414 de este título."