Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| DAWN MARIE ALMEYDA COLLAZO<br><br>Apelante<br><br>v.<br><br>DIANA ALMEYDA ORTIZ, KIMBERLY ROSADO ALMEYDA Y ROBERTO LÓPEZ MORALES<br><br>Apelados | KLAN202400453 | *Apelación*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Civil Núm.: AG2023CV00850<br><br>Sobre:<br>Retracto de Comuneros |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez.

**Rivera Pérez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 19 de julio de 2024.

Comparece la parte apelante, Dawn Marie Almeyda Collazo (en adelante, parte apelante o Sra. Almeyda Collazo), mediante un recurso de *Apelación* y nos solicita que revisemos la *Sentencia* emitida el 18 de abril de 2024 y notificada al día siguiente por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, TPI). Mediante este dictamen, el TPI declaró "No Ha Lugar" la demanda sobre retracto legal presentada por la parte apelante contra Diana Almeyda Ortiz (en adelante, Sra. Almeyda Ortiz), Kimberly Rosado Almeyda (en adelante, Sra. Rosado Almeyda) y Roberto López Morales (en adelante, Sr. López Morales) (en conjunto parte apelada).

Por los fundamentos que expondremos a continuación, revocamos la *Sentencia* apelada.

Número Identificador

SEN2024_____

**I.**

El 29 de mayo de 2023, la Sra. Almeyda Collazo presentó una *Demanda* sobre retracto legal contra la parte apelada.[1] En síntesis, adujo que era comunera, junto a la Sra. Almeyda Ortiz, de los bienes que componen la comunidad hereditaria de la Sucesión del Sr. Próspero Almeyda y la Sra. Esmeralda Ortiz. Indicó, además, que el 24 de enero de 2024 advino en conocimiento de que la Sra. Almeyda Ortiz había suscrito un contrato de opción y promesa de compraventa con el Sr. López Morales, quien era extraño a la comunidad hereditaria, mediante el cual se obligó a venderle su participación en la comunidad hereditaria por la suma de $40,000.00. De este modo, la Sra. Almeyda Collazo señaló que el 13 de febrero de 2023 le envió una misiva a la Sra. Almeyda Ortiz, con copia al Sr. López Morales, en la cual le expresaba su intención de ejercer su derecho preferente (retracto legal) sobre la participación de la comunidad hereditaria que se pretendía enajenar. No obstante, el 18 de mayo de 2023, la Sra. Almeyda Collazo recibió una carta mediante la cual se le informaba que el 15 de mayo de 2023 se había materializado la compraventa de su participación hereditaria al Sr. López Morales. Así pues, solicitó al TPI que se le autorizara consignar la suma de $40,000.00, declarara ha lugar la acción de retracto, ordenara la venta forzosa de la participación hereditaria enajenada, y la imposición a la parte apelada de costas y honorarios de abogados.

Al siguiente día, la Sra. Almeyda Collazo presentó una *Moción sobre consignación de fondos,* esto en cumplimiento con el Artículo 1051 del Código Civil de 2020.[2] Anejó a dicha moción un cheque por la suma de $3,550.00.

---

[1] Apéndice de la *Apelación*, págs. 14- 17.
[2] Entrada Núm. 3 del expediente digital del caso AG2023CV00850 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Posteriormente, el 10 de julio de 2023, la Sra. Almeyda Collazo presentó una *Moción informativa sobre consignación de fondos*.[3] Mediante esta señaló que por error clerical anejó en SUMAC copia de otro cheque que no correspondía al acompañado en la *Demanda*. Por tal razón, le solicitó al TPI que le autorizara la consignación de los fondos en la unidad de cuentas del tribunal. El TPI emitió la siguiente *Orden*: ¨No ha lugar por este momento¨.[4]

Por su parte, el 10 de julio de 2023, la Sra. Almeyda Ortiz y su hija, la Sra. Rosado Almeyda, presentaron su *Contestación a Demanda* en la cual negaron las alegaciones presentadas en su contra y levantaron sus defensas afirmativas.[5] En lo pertinente, negaron que haya sido el 24 de enero de 2023 la fecha en que la Sra. Almeyda Collazo advino en conocimiento de las gestiones sobre la venta de la única propiedad del caudal hereditario de estas. Asimismo, sostuvieron que desde los años 2007 y 2008, la Sra. Almeyda Collazo conocía del estado deteriorado de la propiedad, así como las gestiones realizadas para la venta. De igual forma, adujeron que desde los inicios de las negociones con el Sr. López Morales, mantuvieron informada a la Sra. Almeyda Collazo de las intenciones de este de comprar la propiedad. Señalaron, además, que el Sr. López Morales estuvo continuamente en comunicación con la Sra. Almeyda Collazo.

Al mismo tiempo, la Sra. Almeyda Ortiz y la Sra. Rosado Almeyda presentaron *Reconvención* en la cual reprodujeron sus alegaciones y defensas afirmativas. Asimismo, reclamaron la suma de $20,000.00 en concepto de daños y perjuicios por temeridad y las costas, gastos y honorarios de abogados. A la referida

---

[3] Apéndice de la *Apelación*, págs. 30-31.
[4] Apéndice de la *Apelación*, pág. 32.
[5] Apéndice de la *Apelación*, págs. 33-35.

*Reconvención* se opuso la Sra. Almeyda Collazo el 13 de julio de 2023.[6]

El 18 de julio de 2023, el Sr. López Morales presentó *Contestación a Demanda*.[7] Mediante esta negó las alegaciones presentadas en su contra y levantó sus defensas afirmativas. En lo pertinente, señaló que la demanda sobre retracto de comuneros estaba prescrita; que desde los años 2007 al 2008 la Sra. Almeyda Collazo sabía sobre las gestiones que se realizaban para la venta de la propiedad a un tercero; que la Sra. Almeyda Collazo no expresó en ningún momento su intención de adquirir la propiedad para sí; que entre la Sra. Almeyda Collazo y el Sr. López Morales se habían iniciado conversaciones dirigidas a que este le compraría su participación en la propiedad; y que dicha comunicación entre ambos fue continua y abundante.

El 26 de julio de 2023, el TPI emitió una Orden donde autorizó a la Sra. Almeyda Collazo a consignar los fondos.[8] Así pues, el 2 de agosto de 2023, la Sra. Almeyda Collazo consignó la suma de $40,000.00 en la secretaría del tribunal.[9]

Luego de varios trámites procesales, el 22 de enero de 2024, el TPI de Aguadilla celebró juicio en su fondo.[10] Asimismo, la prueba desfilada en el juicio consistió en el testimonio de la Sra. Almeyda Collazo y del Sr. López Morales.[11]

El TPI dictó *Sentencia*, el 18 de abril de 2024, la cual notificó al siguiente día.[12] En su dictamen el foro primario realizó las siguientes determinaciones de hechos:

> 1. Según lo alegado en la demanda radicada, la demandante y la codemandada Diana Almeyda Ortiz

---

[6] Apéndice de la *Apelación*, págs. 36-38.

[7] Véase la entrada Núm. 15 del expediente digital del Caso Núm. AG2023CV00850 en el sistema Unificado de Manejo y Administración de Casos (SUMAC).

[8] Apéndice de la *Apelación*, pág. 39.

[9] Apéndice de la *Apelación*, pág. 40.

[10] Apéndice de la *Apelación*, págs. 180-197.

[11] Véase Transcripción de la Prueba Oral del juicio en su fondo del 22 de enero de 2024 (en adelante, TPO).

[12] Apéndice de la *Apelación*, págs. 199-202.

son las únicas co-herederas de su difunto abuelo y padre respectivamente Don Próspero Almeyda de acuerdo con el testamento de éste.

La demandante Dawn Marie Almeyda Collazo declaró que tiene un bien en común, casa en Aguadilla, con su tía Diana Almeyda Ortiz. La testigo hizo referencia al testamento donde se le dejó su parte. Dijo que heredaron su primo Kevin, su tía Diana y ella.

2. Dawn y Diana son co-herederas de su difunta abuela y madre respectivamente Doña Esmeralda Ortiz a base de la declaratoria de herederos de ésta.

3. El caudal de ambos causantes lo compone una residencia ubicada en el Barrio Camaseyes de Aguadilla. La demandante indicó que conoce que Diana vendió su participación (3 partes) a Roberto. Se enteró el 24 de enero de 2023 a través de su abogada.

4. Explicó que el acuerdo entre Roberto y Diana fue por $40,000.00 y el pago de impuestos. La información se la dio su abogada. Declaró que le dijo a la abogada que quería comprar la parte de su tía y se depositó $40,000.00 en el Tribunal. La participación de la codemandada Diana Almeyda Ortiz le fue vendida por ésta al codemandado Roberto López Morales por la suma de $40,000.00 más el pago de la deuda con el CRIM ascendente a sobre veintitrés mil dólares ($23,000.00) adicionales.

5. Señaló que la intención de adquirir la casa se notificó mediante carta de su abogada (Exhibit 11). Indicó que Diana no se comunicó con ella y reconoció a Kimberly como su prima.

6. En el contrainterrogatorio, indicó que conoce el testamento preparado por su abuelo. Dijo que no puede leer en español. Sabe que heredaron, su primo (que murió), su tía y ella. Sostuvo que heredó la mitad de una tercera parte. Que el único bien es una casa y que Diana vendió su derecho a Roberto. Explicó que la propiedad tasó $116,000.00 muchos años atrás. Dijo que ella podía dar más de $40,000.00.

7. El 22 de octubre de 2022 se otorgó contrato de opción y promesa de compraventa entre los co-demandados Diana Almeyda Ortiz y Roberto López Morales.

8. El 15 de mayo de 2023 se otorgó la Escritura número 62 sobre Compraventa entre Diana Almeyda Ortiz y Roberto López Morales ante el notario Pedro L. García Morell.

9. Se estipuló que Diana no le hizo oferta por $40,000.00 en venta a Dawn. Además, que Dawn tampoco a Diana. También que Diana recibió las cartas (Exhibits 10 y 11).

10. Roberto declaró que se interesó en la casa abandonada empezando el 2022. Dijo que logró conseguir a Diana, pues vivía cerca. Kimberly le informó que su prima Dawn vivía en Estados Unidos. Indicó, que a ésta, la encontró en las "redes" (Facebook) y le expresó su interés por la propiedad.

11. Explicó que al final del 2022, Dawn le dijo que hablara con su tía. Éste contestó que lo había hecho y que le ofreció pronto de $2,000.00 y pagar $40,000.00. Dawn le contestó, que él tenía qua hablar con su abogada y hacerle la oferta.

12. Roberto habló de las negociaciones con Diana. Señaló que pagó $40,000.00 y asumió la deuda en el CRIM. Además, pagó la escritura.

13. Hubo comunicaciones entre el co-demandado Roberto y la demandante mediante varios mensajes de textos. Éste le hizo oferta de $30,000.00 a Dawn y no fue aceptada. Expresó que la propiedad sigue abandonada y podría ser considerada estorbo público.

El TPI concluyó que la Sra. Almeyda Collazo no había ejercido su derecho de retracto de comuneros dentro del término de treinta (30) días que dispone la ley, contados a partir de que esta conoció del incidente de la compraventa. En consecuencia, el foro primario declaró No ha Lugar la demanda.

Inconforme con esta determinación, la Sra. Almeyda Collazo interpuso el presente recurso de *Apelación* el 7 de mayo de 2024 ante este foro revisor y señaló la comisión del siguiente error:

ERRÓ EL TPI AL COMPUTAR EL TÉRMINO PARA EJERCER DE LA ACCIÓN DE RETRACTO. EL FORO DE INSTANCIA SOSLAYÓ EL DERECHO VIGENTE EN CUANTO A QUE EL TÉRMINO DE 30 DÍAS QUE ESTABLECE EL ARTÍCULO 1058 DEL CÓDIGO CIVIL COMIENZA A COMPUTARSE DESDE QUE LA RETRAYENTE CONOCIÓ "LA VENTA" (TRASPASO) Y NO DESDE QUE LA APELANTE CONOCIÓ DEL "INCIDENTE DE LA COMPRAVENTA" (ACTOS PREPARATORIOS). SIENDO ASÍ QUE, DICHA VENTA TENÍA QUE REALIZARSE EN ESCRITURA PÚBLICA PARA QUE EN EFECTO SE PERFECCIONARA LA VENTA. DICHO EVENTO OCURRIÓ EL 15 DE MAYO DE 2023 Y LA DEMANDA SE INTERPUSO EL 29 DE MAYO DE 2023.

El mismo día, la Sra. Almeyda Collazo presentó una *Moción solicitando autorización para que se permita transcribir la prueba oral.* Ante ello, el 10 de mayo de 2024 emitimos una *Resolución* concediéndole treinta (30) días para presentar la transcripción de la prueba oral por estipulación de las partes. En cumplimiento con lo ordenado, el 4 de junio las partes presentaron ante nos *Moción Conjunta Sometiendo Transcripción.*

El 17 de junio de 2024, la parte apelante presentó su *Alegato Suplementario* haciendo referencia a la transcripción de la prueba oral. Al día siguiente, emitimos una *Resolución* para que la parte

apelada cumpliera con lo dispuesto en la resolución de 5 de junio de 2024.

En cumplimiento con lo ordenado, el 8 de julio de 2024 la parte apelada presentó su *Oposición a Apelación Civil.* Contando con el beneficio de la trascripción de la prueba oral y de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

Es norma conocida en nuestro ordenamiento jurídico que, "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Ortiz Ortiz v. Medtronic.*, 209 DPR 759, 778 (2022), citando a *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Ello implica que un tribunal apelativo debe abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad que realizó el foro primario, evitando descartarlas, modificarlas o sustituirlas por su criterio, aun cuando en su evaluación particular hubiera emitido un juicio distinto. *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007); *Argüello v. Argüello,* 155 DPR 62, 78 (2001).

El fundamento de esta norma, en cuanto a la prueba testifical, yace en que es el foro primario quien de ordinario se encuentra en mejor posición para aquilatarla, ya que es quien ve y oye a los testigos, pudiendo apreciar sus gestos, titubeos, contradicciones, dudas, vacilaciones y, por consiguiente, formar en su conciencia la convicción en cuanto a si dicen o no la verdad. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67-68 (2009). En contraste, los foros apelativos solo contamos con récords mudos e inexpresivos. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esta

norma, sin embargo, no es absoluta, pudiendo un apelante presentar prueba que demuestre que la apreciación realizada por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo*, supra, pág. 741. Por todo lo cual, se ha establecido la regla fundamental en nuestro ordenamiento de que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el Tribunal de Primera Instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad, o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013). Véase la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2.

En cuanto a la prueba testifical, procede nuestra intervención con la apreciación de la prueba o la adjudicación de credibilidad de los testigos en aquellos casos en que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986). Por tanto, quien impugne una sentencia o resolución bajo estos parámetros deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del foro primario. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 25 (2007).

No obstante, esta norma de deferencia no alcanza la apreciación de la prueba documental o pericial realizada por el foro de primera instancia. En ese sentido, la jurisprudencia del Tribunal Supremo ha sido consistente en que los foros revisores nos encontramos en igualdad de condiciones con el foro sentenciador para evaluar y apreciar la prueba documental admitida en evidencia.

*Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 487 (2007).

**B.**

El Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, según enmendado (en adelante, Código Civil), establece que los derechos de adquisición preferente son "aquellos derechos limitados que facultan para conseguir la transmisión de una cosa o de un derecho, por quien sea su dueño o titular, mediante el pago de su precio y el cumplimiento de los demás requisitos dispuestos en el negocio jurídico o la ley." Artículo 1022, 31 LPRA sec. 8801. Asimismo, el referido estatuto establece que la opción de compra, el tanteo y el retracto conforman la categoría de derechos reales de adquisición preferente. *Íd.*

En nuestro ordenamiento jurídico, el derecho de tanteo autoriza a su titular para la adquisición preferente de una cosa, en caso de que el propietario de esta quiera enajenarla mediante un acto oneroso. Artículo 1033 del Código Civil, 31 LPRA sec. 8831. De otra parte, la figura del retracto es el derecho de subrogarse, con las mismas condiciones estipuladas en el contrato, en lugar de la persona que adquiere una cosa por compra o dación en pago. Artículo 1055 del Código Civil, 31 LPRA sec. 8871.

Estos derechos pueden constituirse por actos entre vivos, a título oneroso o gratuito o por causa de muerte, o mediante cesión, reserva o división. Artículo 1023 del Código Civil, 31 LPRA sec. 8802. La constitución puede realizarse mediante un negocio jurídico, pacto o estipulación, expresos e independientes, que se integran en otro negocio jurídico. *Íd.* Además, el Código Civil nos dice que el retracto y el tanteo pueden disponerse por la ley. *Íd.* De igual modo, el derecho de tanteo y retracto pueden ser de naturaleza real o personal. Artículo 1024 del Código Civil, 31 LPRA sec. 8803.

En el caso en que ya se haya consumado la transmisión de la propiedad, el titular del derecho puede subrogarse en la posición del

tercero adquirente mediante el derecho de retracto. Artículo 1033 del Código Civil, *supra.*

El tanteo y el retracto pueden ser convencionales o legales. *González v. Sucn. Cruz*, 163 DPR 449, 456 (2004). En particular, la controversia ante nos gira en torno al tanteo y retracto legal de la comunidad hereditaria. Según el Código Civil, "[e]l coheredero puede ejercer el derecho de tanteo si alguno de los coherederos decide enajenar su cuota a un extraño." Artículo 1605 del Código Civil, 31 LPRA sec. 11077. El coheredero tiene un término de treinta (30) días para ejercer su derecho de tanteo. *Íd*; M. R. Garay Aubán, *Código Civil 2020 y su historial legislativo: Artículo, Referencias, Concordancias, Notas del Compilador y Memoriales Explicativos*, 2da. ed., San Juan, Ed. Situm, 2021, T. 3, pág. 427-428. El referido derecho de tanteo de la comunidad hereditaria está en armonía con el derecho de tanteo de la comunidad de bienes. *Íd.*, T. 5, pág. 93-94.

Asimismo, el Capítulo VI del Código Civil regula lo concerniente a la comunidad hereditaria. En lo pertinente, el Artículo 1601, 31 LPRA sec. 11073, dispone que "[e]n lo que no está previsto en este capítulo, el estado de comunidad hereditaria **se rige por las disposiciones relacionadas con la administración de la herencia y con las de la comunidad de bienes**. " (Énfasis nuestro). Así pues, se establece un carácter supletorio sobre las normas de la comunidad de bienes. Garay Aubán, *op. cit.*, T. 5, pág. 89. Por su parte, el Artículo 1058 del Código Civil, 31 LPRA sec. 8874, dispone que "[n]o puede ejercitarse el derecho de retracto legal sino dentro de treinta (30) días **contados desde la inscripción en el registro, y en su defecto, desde que el retrayente haya tenido conocimiento de la venta**." (Énfasis nuestro). El derecho de retracto es subsidiario al tanteo legal cuando este último no se puede ejercer por causas no imputables al retrayente. Garay Aubán,

*op. cit.*, T. 3, pág. 450.

De igual modo, el Código Civil establece que:

El derecho de tanteo se convierte en derecho de retracto si falta la notificación fehaciente del acuerdo de enajenación, o si esta se ha realizado en condiciones distintas de las que constan en la notificación. El retracto debe ejercerse dentro de un plazo igual al pactado para el ejercicio del tanteo.
Si no se ha pactado un plazo, o si se trata de un tanteo legal, el plazo del retracto es de sesenta (60) días. **El plazo comienza a contar, en todos los casos, desde la fecha de la inscripción registral o del conocimiento de la enajenación**. (Énfasis nuestro) Artículo 1038 del Código Civil, 31 LPRA sec. 8836.

El término de sesenta (60) días que dispone el Artículo 1038, *supra,* es contradictorio al término de treinta (30) días que dispone el Artículo 1058, *supra.* Sobre esto, el profesor Garay es de la posición que el término de sesenta (60) días debe prevalecer. Garay Aubán, *op. cit.*, pág. 453. No obstante, en lo que sí existe concordancia es desde cuando puede ejercitarse el derecho, esto es, **desde la inscripción en el registro, y en su defecto, desde que el retrayente haya tenido conocimiento de la venta.**

Cabe aclarar que nuestro más alto foro ha señalado que ¨el retracto de coherederos, es una especie o subespecie del retracto de comuneros, pues en ambos se trata de una situación de indivisión, sólo que el primero presenta una variante por razón del objeto sobre el cual recae la comunidad.¨ Así pues, en el retracto sucesorio el objeto de la transmisión es la cuota o participación hereditaria del heredero en el caudal mientras que en el retracto de comuneros, el objeto es la participación determinada del comunero en el bien poseído en común proindiviso. *Rivera Esbri v. Archevald,* 83 DPR 604, 614 (1961).

Por otro lado, el Artículo 1051 del Código Civil, 31 LPRA sec. 8862, dispone que:

El vendedor no puede hacer uso del derecho de retracto sin reembolsar al comprador el precio de la venta, y, además:

(a) los gastos del contrato, y cualquier otro pago legítimo para la venta; y

(b) los gastos necesarios y útiles hechos en la cosa vendida.

Para que pueda darse curso a las demandas de retracto, se requiere que se consigne el precio si es conocido, o si no lo es, que se dé fianza de consignarlo luego que lo sea.

El Artículo 1051 tiene procedencia en el Artículo 1407 del Código Civil de 1930 y mantiene un lenguaje similar. Garay Aubán, op. cit., T. 3, pág. 449. La consignación es un requisito estatuario que se debe cumplir para poder ejercer el derecho de retracto. *Moreno v. Morales et al.*, 187 DPR 429, 437 (2012). Al presentarse la demanda de retracto se deben consignar a la misma vez el precio de venta dentro del término para ejercitar el retracto. *Gallardo v. Petiton y V.T.N., Inc.*, 132 DPR 39, 50 (1992). Dichos términos son fatales e improrrogables. *Moreno v. Morales et al.*, supra. Así pues, contrario al principio de la libre contratación, las condiciones requeridas para su ejercicio deben cumplirse estrictamente. *González de Salas v. Vda. de González*, 99 DPR 577, 583 (1971). Asimismo, nuestro Tribunal Supremo ha señalado que ¨[l]a potestad de ejercer el retracto se considera como un privilegio que afecta los derechos de propiedad de un adquirente, por lo que no admite ningún tipo de flexibilidad en sus términos.¨ *Íd.*, pág. 437.

### III.

En su recurso de *Apelación,* la Sra. Almeyda Collazo alegó en su único señalamiento de error que incidió el foro apelado al determinar que el término de treinta (30) días para ejercer la acción de retracto establecido en el Artículo 1058 del Código Civil, *supra*, debió de computarse desde que la retrayente conoció "la venta" (traspaso) y no desde que la apelante conoció del "incidente de la compraventa" (actos preparatorios). Así las cosas, sostiene que dicha venta tenía que realizarse en escritura pública para que en

efecto se perfeccionara la venta evento que ocurrió el 15 de mayo de 2023 y la demanda se interpuso el 29 de mayo de 2023.

El Código Civil establece que un coheredero tiene un término de treinta (30) días para ejercer su derecho de tanteo cuando otro coheredero desea enajenar su cuota a un extraño. Artículo 1605 del Código Civil, *supra*. No obstante, cuando falte la notificación fehaciente del acuerdo de enajenación, o si esta se realizó en condiciones distintas de las que constan en la notificación-si no se ha pactado un plazo, o si se trata de un tanteo legal- el derecho de tanteo se convertirá en un derecho de retracto y tendrá un plazo de sesenta (60) días. Artículo 1038 del Código Civil, *supra*. Asimismo, el plazo comienza a contar, en todos los casos, desde la fecha de la inscripción registral o **del conocimiento de la enajenación**. *Íd*. En cuanto al retracto legal, este puede ejercitarse dentro de treinta (30) días contados desde la inscripción en el registro, y en su defecto, **desde que el retrayente haya tenido conocimiento de la venta**. Artículo 1058 del Código Civil, *supra*. El retracto legal es subsidiario al tanteo legal. Garay Aubán, *op. cit.* Además, señalamos que lo que no está previsto en el capítulo de la comunidad hereditaria se rige por las disposiciones relacionadas con la administración de la herencia y con las de la comunidad de bienes. Artículo 1601 del Código Civil, *supra*.

De las determinaciones de hechos del TPI surge que la Sra. Almeyda Collazo indicó que se enteró, el 24 de enero de 2023, que la Sra. Almeyda Ortiz vendió su participación al Sr. López Morales. No obstante, también surge de las determinaciones de hechos del TPI que la compraventa de la participación entre la Sra. Almeyda Ortiz y el Sr. López Morales se llevó a cabo el 15 de mayo de 2023 mediante la Escritura Núm. 62 sobre Compraventa.

Los términos reseñados previamente-y que el TPI encontró probados- son contradictorios. A pesar de esto, se desprende de la

prueba documental y la TPO que de lo que se enteró la Sra. Almeyda Collazo el 24 de enero de 2023 fue del Contrato de Opción y Promesa de Compraventa suscrito entre la Sra. Almeyda Ortiz y el Sr. López Morales, el cual tiene fecha del 28 de octubre de 2022.[13] Desde ese momento, es decir, desde el conocimiento de la intención de vender, la Sra. Almeyda Collazo tenía un término de treinta días (30) para ejercer su derecho de tanteo legal como coheredera. Sobre esto, surge de una misiva enviada por la representación legal de la Sra. Almeyda Collazo que intentó ejercer su derecho de tanteo dentro del término establecido, esto es, el 13 de febrero de 2023.[14]

A pesar de que la Sra. Almeyda Collazo levantó su derecho preferente, la venta de la participación de la Sra. Almeyda Ortiz se llevó a cabo el 15 de mayo de 2023 mediante la Escritura Núm. 62 sobre Compraventa.[15] Ante ello, el derecho de tanteo de la Sra. Almeyda Collazo se convirtió en un derecho de retracto legal. Así pues, una vez esta se entera de la venta, interpuso la acción correspondiente de retracto el 29 de mayo de 2023 ante el TPI. Es decir, catorce (14) días luego de haberse llevado a cabo la venta mediante escritura pública. Por tanto, ante la notificación fehaciente de la intención de vender, aplicamos el término de treinta (30) días de retracto legal y no el de sesenta (60) de la conversión del tanteo al retracto contemplado en el Artículo 1038 del Código Civil, *supra*, toda vez que este último solo aplica para situaciones en donde no se dio la notificación fehaciente.

En este caso, ante las actuaciones de la Sra. Almeyda Ortiz por la venta de la participación luego de que la Sra. Almeyda Collazo intentara ejercer su derecho de tanteo mediante carta, es aplicable el derecho de retracto legal de treinta (30) días establecido en el

---

[13] Apéndice de la *Apelación*, págs. 157-159 y 184. Véase apéndice de la *Apelación*, pág. 184 (Exhibit 3).

[14] Apéndice de la *Apelación*, pág. 163.

[15] Apéndice de la *Apelación*, págs. 102-111. Véase apéndice de la *Apelación*, pág. 184. (Exhibit 2).

Artículo 1058 del Código Civil, *supra*. No existen causas imputables a la Sra. Almeyda Collazo por las cuales esta no pudo ejercer su derecho de tanteo, por lo que hubo conversión de tanteo a retracto legal. De este modo, el término de treinta (30) días de la comunidad de bienes aplica supletoriamente a la comunidad hereditaria. Por lo tanto, la Sra. Almeyda Collazo ejerció su derecho de retracto desde que tuvo conocimiento de la venta, el cual fue dentro del término de treinta (30) días que dispone el Código Civil. Es decir, la compraventa se llevó a cabo el 15 de mayo de 2023 y la causa de acción se interpuso el 29 de mayo de 2023.

Por otro lado, no nos mueve la contención de la parte apelada a los efectos de que la consignación fue tardía. Se desprende del expediente del caso de epígrafe que la Sra. Almeyda Collazo solicitó la consignación de $40,000.00 desde el día que interpuso la *Demanda*, por lo que, en unión con lo resuelto anteriormente, esta solicitud se realizó dentro del término de treinta (30) para ejercer el retracto. Fue el TPI, ante su manejo de caso, quien no aceptó la consignación al inicio del pleito. Sin embargo, la consignación fue aceptada posteriormente para la continuación de los procedimientos en el foro inferior.

Concluimos que, a la luz del derecho aplicable, la Sra. Almeyda Collazo presentó su causa de acción de retracto legal dentro del término de treinta (30) días dispuesto en el del Código Civil. Lo aquí resuelto es cónsono con el principio de excluir extraños en la comunidad en aras de evitar pugnas y conflictos.

**IV.**

Por los fundamentos anteriormente expuestos, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos ulteriores a tenor con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones