OLIVIERI *v.* BIAGGI.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 668.—Resuelto en junio 2, 1911.

VENTA DE PARTICIPACIÓN HEREDITARIA—SUBROGACIÓN DE HEREDEROS—INTERPRETACIÓN DE LEY—TÉRMINO PARA EJERCITAR LA SUBROGACIÓN.—De acuerdo con el artículo 1034 del Código Civil de Puerto Rico, el término de un mes que tiene un coheredero para ejercitar el derecho de subrogación en los casos expresados en dicho artículo, empieza a contarse desde que el coheredero tiene conocimiento de la venta, ya reciba ese conocimiento directamente del coheredero que vendió o de cualquiera otra persona y por cualquier otro conducto.

ID.—SUBROGACIÓN EJERCITADA FUERA DE TÉRMINO—PRESCRIPCIÓN.—De acuerdo con la anterior doctrina, justificado el hecho de que un coheredero obtuvo copia auténtica de una escritura de venta otorgada por otro coheredero cinco días después de su otorgamiento, la acción que ejercita dos meses después para subrogarse en lugar del comprador, está prescrita y ha sido ejercitada fuera del término de un mes que concede el artículo 1034 del Código Civil.

JURISPRUDENCIA DEL TRIBUNAL SUPREMO DE ESPAÑA—LEYES TOMADAS DE OTROS ESTADOS—INTERPRETACIÓN DE LEYES.—Es regla de interpretación generalmente admitida, que cuando la Asamblea Legislativa de cualquier Estado adopta sustancialmente el Código de otro Estado, o en particular cualquier artículo del mismo con las mismas palabras en él usadas, se presume que la implantación de dicho Código o artículo implica también la aceptación de la interpretación dada a los mismos por el Tribunal Supremo del Estado de donde se tomaron.

ID.—INTERPRETACIÓN DEL CÓDIGO CIVIL DE PUERTO RICO—SENTENCIAS DEL TRIBUNAL SUPREMO DE ESPAÑA.—Las sentencias dictadas por el Tribunal Supremo de España con anterioridad al 18 de octubre de 1898, interpretando el Código Civil Español vigente en Puerto Rico en dicha época, tienen fuerza obligatoria para los Tribunales de Puerto Rico bajo la dominación americana.

ID.—SENTENCIAS DEL TRIBUNAL SUPREMO DE ESPAÑA POSTERIORES AL CAMBIO DE SOBERANÍA.—Las sentencias dictadas por el Tribunal Supremo de España con posterioridad al 18 de octubre de 1898, interpretativas del Código Civil Español que continuó vigente en Puerto Rico, carecen de fuerza legal en esta Isla, y solamente tiene la autoridad que la fuerza de sus razonamientos le imparta a juicio de nuestros tribunales.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Felipe Casalduc.*

Abogados del apelado: *Sres. José Tous Soto y Manuel Tous Soto.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

Esta es una acción sobre subrogación de derechos. El 19 de mayo, 1910, Euclides y Maximiliano Olivieri vendieron a Pedro Pablo Biaggi toda su participación en los bienes relictos de su abuelo, Félix Olivieri y Cervoni, la que habían heredado como representantes de su padre, Juan María Olivieri, fallecido anteriormente. El demandante en este caso, Juan Félix Olivieri, hijo natural y heredero testamentario de Juan Félix Olivieri y Cervoni, obtuvo una copia auténtica de la escritura de venta del notario ante quien se otorgó la misma, el 24 de mayo, cinco días después de su otorgamiento. El 26 de julio, más de dos meses después, entabló él esta acción para subrogarse en lugar del comprador en el contrato de venta. El 5 de noviembre pasado, la Corte de Distrito de Ponce dictó sentencia, concediendo la súplica de la demanda, y ordenando que el demandado, Pedro Pablo Biaggi, otorgue escritura a favor del demandante subrogándole en su lugar por lo que respecta a los derechos del demandado en la venta que a él le hicieran Euclides y Maximiliano Olivieri, el 19 de mayo anterior, mediante pago por parte del demandante de quinientos dollars ($500), con los intereses legales de dicha cantidad; y que el demandado pague las costas.

El demandado apeló contra esta sentencia y el caso se encuentra ahora sometido a la consideración de este tribunal. La acción se basa en los preceptos del Código Civil, cuya artículo 1034 dice así:

"Artículo 1034.—Si alguno de los herederos vendiere a un extraño su derecho hereditario antes de la partición, podrán todos o cualquiera de los coherederos subrogarse en lugar del comprador, reembolsándole el precio de la compra, con tal que lo verifiquen en término de un mes a contar desde que esto se les haga saber."

Todo el caso gira sobre la interpretación que se dé a la frase final de dicho artículo "en término de un mes a contar desde que esto se les haga saber." Desde luego, si el conocimiento que de ello recibiera el demandante del notario, por medio de la copia de la escritura de venta, fué suficiente para ajustarse a la ley, la acción había prescrito en virtud de las últimas palabras citadas; de otro modo, no. El demandante y apelado sostiene que debió habérsele dado conocimiento por el comprador, o el vendedor, de la venta por la que se enajenó la participación en la herencia de su padre, y que cualquier conocimiento que él obtuviera de otro modo no era el aviso que requiere el estatuto.

El apelante, en apoyo de su alegación de que la posesión de la copia de la escritura de venta misma era suficiente aviso de la venta, cita una decisión del Tribunal Supremo de España del 26 de noviembre, 1900, y que se halla en el tomo 90 de la Jurisprudencia Civil, página 729. Dicha decisión viene a decir lo siguiente: "Los términos de los artículos 1067 y 1521 del Código no autorizan la inteligencia e interpretación que les da el recurrente, porque el único hecho que necesariamente ha de conocer el coheredero para poder ejercitar la acción sobre subrogación de derechos, es el de la venta realizada por otro coheredero de su derecho hereditario antes de la partición de los bienes, quedando siempre y en todo caso el heredero que trata de subrogarse sometido, por ministerio de la ley, a las condiciones con que el comprador haya adquirido dicha participación en los bienes al subrogarse en su lugar, siendo indiferente la forma en que adquiera tal conocimiento, ya que el Código no impone ninguna determinada y especial, lo cual está en consonancia con lo que prescribe el artículo 1524 (correspondiente al artículo 1427 de nuestro estatuto) del mismo Código, según el cual el término para que puedan ejercitar los comuneros, o colindantes, la acción legal sobre subrogación de derechos empezará a contarse desde que la persona que trata de subrogarse *hubiese tenido conocimiento de la venta,* cualquiera que sea por lo tanto el

medio de haber llegado a este conocimiento, no habiendo cometido consiguientemente el tribunal sentenciador ninguna de las infracciones que se le atribuyen en los motivos del recurso.''

90 Jurisprudencia Civil, 729.

Esta decisión ciertamente apoya la proposición que sostiene el apelante. Pero surge la cuestión en cuanto a la fuerza que tenga ahora en Puerto Rico, habiendo sido emitida con posterioridad a la fecha en que esta Isla pasó a la dominación americana. La cita que hace el apelante de la opinión del Juez Presidente Fuller, no tiene aplicación a un caso como éste. La cita mencionada se refiere a los estatutos y otras leyes de la nación cedente existentes en la época de la cesión, y nó a estatutos aprobados o interpretaciones dadas a los mismos después de la cesión.

La norma que hasta aquí hemos seguido es que cuando se adopta un estatuto de otro país, se presume que la intención legislativa fué el tomar tal estatuto con las interpretaciones jurídicas que se le hubieran dado por los más altos tribunales del Estado del cual se adoptó el estatuto.

*López* v. *Am. R. R. Co.*, resuelto 28 de junio, 1906, y casos citados allí.

Es además una regla de interpretación universalmente admitida que cuando la asamblea legislativa de cualquier Estado adopta sustancialmente el Código de otro Estado, y en particular cualquier artículo del mismo con las mismas palabras en él usadas, se presume que la adopción abarca también las interpretaciones que anteriormente el Tribunal Supremo del Estado que haya promulgado el estatuto original, ha dado a dicho código o a algún artículo del mismo. Esta es la regla de interpretación que rige, si no universal, generalmente en los Estados Unidos, como lo demuestran las siguientes autoridades: *Henrietta & Co.* v. *Gardner,* 173 U. S., 130; *Brown v. Walker,* 161 U. S., 600; *McDonald* v. *Hovey,* 110 U. S., 628; *Cathcart* v. *Robinson,* 30 U. S., 279; *Pennock* v. *Dialogue,* 27 U. S., 16; *Int. Com. Com.* v. *B. & O. R. R.,* 145

145 U. S., 263; *Lindley* v. *Davis,* 6 Mont., 453; *Hershfield* v. *Aiken,* 3 Mont., 449; *Greiner* v. *Klein,* 28 Mich., 12; *Nicollet Nat. Bk.* v. *City Bank,* 8 Am. St. Rep., 643; *Nelson* v. *Stull,* 68 Pac., Rep., 618; Sedgwich on Cons. Stat. & Cons. Law, 363; Smith's Com. on Stat. & Cons. Law, sec. 634; *P. P. R.* v. *Francisco Rivera,* resuelto 25 de junio, 1904; *P. P. R.* v. *James E. Kent,* resuelto 5 de marzo, 1906; *Eurípides López* v. *The American R. R. Co. of P. R.,* resuelto 28 de junio, 1906; *The P. P. R.* v. *José Puente Durán,* resuelto por este tribunal el 17 de febrero, 1908.

El Código Civil español, que empezó a regir en Puerto Rico por virtud del Real Decreto del 31 de julio de 1889, continuó desde entonces en vigor durante la dominación española; y por la Orden General No. 1, promulgada por el General Brooke, del Ejército de los Estados Unidos, el 18 de octubre de 1898, se dispuso que continuara en vigor junto con las otras leyes provinciales y municipales a menos que resultaran incompatibles con el cambio de condiciones realizado en Puerto Rico, por la cesión de la soberanía a la sazón efectuada. (Véanse las leyes, ordenanzas, decretos y órdenes militares publicadas por el Departamento de la Guerra de los Estados Unidos, pág. 2179, parte 4.)

El 1º. de mayo de 1900 empezó a regir la ley orgánica votada por el Congreso confiriendo el gobierno civil a esta Isla, la que en su artículo 8 dispone: Que las leyes y ordenanzas de Puerto Rico actualmente en vigor, continuarán vigente, excepto en los casos en que sean alteradas, enmendadas o modificadas por la presente; o hayan sido alteradas o modificadas por órdenes militares y decretos vigentes cuando esta ley entre a regir, y en todo aquello en que las mismas no resulten incompatibles o en conflicto con las leyes estatutorias de los Estados Unidos no inaplicables localmente, o con las presentes disposiciones hasta que sean alteradas, enmendadas o revocadas por la autoridad legislativa creada por la presente para Puerto Rico, o por una ley del Congreso de los Estados Unidos. Esta disposición dejó vigente el Có-

digo Civil español, el que virtualmente vino a ser la ley estatutoria aun en el caso de que la orden militar promulgada
por el General Brooks no hubiera producido tal efecto, lo que
en nuestra opinión hizo. Nuestro Código Civil, que fué copiado casi enteramente del de España, fué adoptado por la
legislatura insular el año 1902, promulgando formalmente en
forma estatutoria el Código Civil, con algunas enmiendas al
mismo que habían ya sido hechas por el Gobierno Militar y
por el Congreso. Aunque el caso español en que se han fundado fué resuelto después que el artículo 1034 del Código
Civil formó parte de la ley estatutoria de Puerto Rico, estamos en libertad de seguirlo en tanto cuanto se recomiende
a nuestro buen criterio. Por supuesto que nosotros respetamos en alto grado la erudición y sabiduría de los jueces que
emitieron aquella opinión.

Desde aquella fecha, el 18 de octubre de 1898, el Código
Civil continuó en vigor con la interpretación que hasta entonces se le había dado por el Tribunal Supremo de España,
siendo obligatoria para los tribunales de Puerto Rico tal
jurisprudencia; pero desde la ocupación americana las Decisiones del Tribunal Supremo de España posteriores a esa
fecha no han tenido la autoridad de interpretación jurídica,
sino la fuerza de doctrina jurídica que les den las razones
legales en que se funden. Y la razón es obvia. No puede
admitirse que las decisiones de un tribunal extranjero puedan obligar a los tribunales de este país. Si se admitiera
que las decisiones del Tribunal Supremo de España hasta el
año 1902, en que comenzó a regir el Código Revisado, obligaran a los tribunales de esta isla como fuente de jurisprudencia legal, tendríamos que los tribunales de Puerto Rico,
a pesar de haber cesado la dominación española, estarían también obligados a seguir estatutos votados por las Cortes españolas, pues tanta razón hay para lo uno como para lo otro;
y esto es claramente inadmisible, pues nadie sostendrá que
se pueda admitir el que leyes votadas por la Legislatura es

pañola derogando, aclarando, adicionando o modificando preceptos del Código Civil, deban observarse en esta Isla como legalmente obligatorias después. del cambio de soberanía.

Por lo tanto, opinamos que el 18 de octubre de 1898 el Código Civil de España, tal como entonces regía, con la interpretación legal que ya le habían dado los tribunales españoles vino a ser la ley local de Puerto Rico bajo la· dominación americana; y que desde entonces cualesquiera decisiones emitidas por el Tribunal Supremo de España no han tenido fuerza legal en Puerto Rico y solamente se consideran por este tribunal como autoridad, por lo que se recomienden a nuestro criterio por la fuerza de las razones y argumentos que expongan. Siendo así, aunque la opinión que se ha citado del Tribunal Supremo de España fué emitida en 1900 después del cambio de soberanía en Puerto Rico, siendo dicha decisión clara y conveniente debe por ese motivo seguirse por nosotros en el caso que nos ocupa. Por las razones aducidas en esa decisión española, que concuerda con nuestro propio parecer, en la que se interpreta el artículo 1067 del código español correspondiente a nuestro artículo 1034, no podemos menos que declarar que el demandante había recibido suficiente conocimiento de la venta y que debió haber entablado su acción dentro del mes siguiente, y no habiéndolo hecho, estaba impedido de hacerlo por el estatuto mismo. Este parecer lo sostienen varias decisiones de nuestro mismo tribunal, entre otras *Felici* v. *Ribas,* 3 Dec. P. R., p. 528; *Lucero* v. *Vilá,* resuelto el 11 de febrero de 1911; y *Calaf* v. *Calaf,* resuelto el 14 de febrero, 1911.

Así es que debemos revocar la sentencia de la corte sentenciadora y dictar aquí una sentencia a favor del demandado y apelante; declarando sin lugar la demanda, con las costas de primer instancia a cargo de la parte demandante y apelada.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.