ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AKRAM ODEH; KHETAM ODEH; ANUAR SAMMY ODEH; MANAL SAMMY ODEH; NURA SAMMY ODEH; MOSTAFA SAMMY ODEH; IBRAHIM ODEH,<br><br>Apelante,<br><br>v.<br><br>AWADALLAH ODEH,<br><br>Apelada. | TA2025AP00368 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior Bayamón.<br><br>Civil núm.: BY2022CV05155.<br><br>Sobre: declaración de indignidad. |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

El presente recurso de apelación surge de una demanda sobre indignidad[1] instada por los señores Akram Odeh, Khetam Odeh, Anuar Sammy Odeh, Manal Sammy Odeh, Nura Sammy Odeh, Mostafa Sammy Odeh, Ibrahim Odeh (la parte apelante o los apelantes), contra Awadallah Odeh (la parte apelada o el apelado). Mediante el referido recurso, la parte apelante solicita la revocación de la *Sentencia* notificada el 18 de julio de 2025, por el Tribunal de Primera Instancia, Sala de Bayamón, en la cual se desestimó la demanda sobre declaración de indignidad presentada por la parte apelante por entender que esta carece de legitimación activa para invocarla.

Evaluadas las sendas posturas de las partes litigantes, a la luz del derecho aplicable, resolvemos.

---

[1] De la demanda instada el 12 de octubre de 2022, surge claramente que la **petición de la parte demandante, aquí apelante, solo trata de una sentencia declaratoria de indignidad**. Los restantes procedimientos de liquidación de herencia se ventilan en otro caso civil.

I

El 12 de octubre de 2022, los apelantes presentaron una demanda en la que solicitaban que se declarara a Awadallah Odeh indigno para suceder a su padre, don Sammy Odeh Abdul Jawad[2]. De los hechos contenidos en la demanda surge que don Sammy Odeh Abdul Jawad falleció a los setenta (70) años, el 26 de julio de 2021, a causa de una enfermedad cardiaca. Le sucedieron ocho (8) legitimarios: su esposa, Khetam Odeh; sus tres (3) hijas, Anuar Sammy Odeh, Manal Odeh y Nura Odeh; y sus cuatro (4) hijos, Akram Odeh, Mostafa Odeh, Ibrahim Odeh y Awadallah Odeh.

Además, la demanda expone que el señor Awadallah Odeh procreó tres (3) hijos en su ya disuelto matrimonio con la señora Raja Kamal Jamil: Sammy Awadallah Odeh, nacido el 7 de septiembre de 2005; Ibrahim Awadallah Odeh, nacido el 11 de junio de 2007; y Miriam Awadallah Odeh, nacida el 7 de mayo de 2009.

El 17 de enero de 2023, el apelado presentó una moción de desestimación en la que alegó que la demanda no contenía hechos suficientes para justificar la concesión de un remedio, por tratarse de alegaciones conclusorias, que no establecían los fundamentos legales de una acción de indignidad conforme al Artículo 1556 del Código Civil de Puerto Rico, 31 LPRA 10973[3]. Los apelantes presentaron su oposición el 7 de febrero de 2023[4], y, el 27 de febrero de 2023, el Tribunal de Primera Instancia emitió una resolución mediante la cual declaró sin lugar la solicitud de desestimación[5].

Posteriormente, el 14 de marzo de 2023, el apelado presentó su contestación a la demanda[6].

---

[2] Entrada 1 SUMAC TA, apéndice 1.

[3] *Íd.*, apéndice 18.

[4] *Íd.*, apéndice 20.

[5] *Íd.*, apéndice 23.

[6] *Íd.*, apéndice 27.

Tras varias incidencias procesales, las cuales no resultan necesarias pormenorizar, el 29 de noviembre de 2024, el apelado presentó una nueva moción de desestimación en la que alegó que la parte apelante **carecía de legitimación activa** para instar la causa de acción, toda vez que **las únicas personas legitimadas para hacerlo eran sus hijos**[7].

El 17 de diciembre de 2024, la parte apelante presentó su oposición a dicha solicitud[8], y, el 19 de diciembre 2024, el apelado presentó su réplica[9].

Celebrada la vista argumentativa sobre la solicitud de desestimación el 12 de junio de 2025[10], el 17 de julio de 2025, el foro primario emitió una *Sentencia* en la cual declaró con lugar la moción de desestimación al concluir que solamente los hijos del apelado ostentaban legitimación activa para presentar la causa de acción[11].

El 31 de julio de 2025, la parte apelante presentó una moción de reconsideración[12], a la cual el apelado se opuso el 25 de agosto de 2025[13]. Ese mismo día, el Tribunal de Primera Instancia emitió una orden en la que declaró sin lugar la reconsideración[14].

Inconforme con dicha determinación, el 23 de septiembre de 2025, la parte apelante acudió ante este foro y presentó su recurso[15], en el que expuso el siguiente error:

> Erro el Tribunal de Primera Instancia al desestimar la causa de acción de indignidad y concluir que las únicas personas con legitimación activa para invocar la causal son los hijos del apelado.

---

[7] Entrada 1 SUMAC TA, apéndice 113.

[8] *Íd.*, apéndice 118.

[9] *Íd.*, apéndice 119.

[10] *Íd.*, apéndice 146.

[11] *Íd.*, apéndice 149.

[12] *Íd.*, apéndice 150.

[13] *Íd.*, apéndice 154.

[14] *Íd.*, apéndice 155.

[15] Entrada 1 SUMAC TA.

El 22 de octubre de 2025, la parte apelada presentó su oposición al recurso de apelación[16].

II

A

El Código Civil de Puerto Rico de 1930 constituyó, durante casi un siglo, el cuerpo normativo fundamental que rigió la mayoría de las relaciones jurídicas en nuestra jurisdicción. Desde su entrada en vigor, dicho Código estableció las bases del derecho puertorriqueño, inspirado en gran medida en el Código Civil español, extendido a Puerto Rico por Real Decreto del 31 de julio de 1889[17], y en la tradición romanista. No obstante, el paso del tiempo, los cambios sociales y el desarrollo de nuevas realidades jurídicas hicieron necesaria una reforma sustancial.

Luego de cerca de cien años de vigencia, el Código Civil de 1930 fue derogado por el Código Civil de 2020, el cual ha estado en vigor por los pasados cinco años. Este nuevo Código busca modernizar las normas jurídicas que rigen en Puerto Rico, adaptándolas a las necesidades y valores del siglo XXI. I. Figueroa Campos, F. Ortiz Caraballo, *El Derecho Hereditario Puertorriqueño bajo el Código Civil de 2020,* 60 Rev. Der. Pur. 437 (2021). Entre los ámbitos que experimentaron modificaciones, se encuentra el Derecho Sucesorio, el cual sufrió múltiples cambios estructurales y conceptuales, que incluyó la creación de nuevas disposiciones que no tenían precedente en el Código anterior.

En virtud de estos cambios, resulta necesario acudir a los principios de hermenéutica legal para interpretar las disposiciones introducidas, y así determinar el verdadero alcance y la intención legislativa detrás de ellas. *Class Fernández v. Metro Health Care*, 214 DPR 348, 364 (2024); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 738 (2012). De conformidad al Artículo 23 del Código Civil de Puerto Rico de 2020, "cuando las palabras de una ley son ambiguas, su sentido debe buscarse en su espíritu o en su

---

[16] Entrada 3 SUMAC TA.

[17] *Colección Legislativa de España*, Madrid, 1890, T. 143, pág. 582; *Olivieri v. Biaggi*, 17 DPR 704 (1911).

intención, en su contexto y en comparación con otras palabras o frases que se relacionen." 31 LPRA sec. 5345. Así lo ha reconocido el Tribunal Supremo de Puerto Rico al expresar que "el análisis hermenéutico debe evitar la aplicación literal de la ley si esto tiene consecuencias absurdas, ya que 'la interpretación debe ser razonable y consecuente con el propósito legislativo'." *Class Fernández v. Metro Health Care*, 214 DPR, a las págs. 365-366, citando a *Consejo de Titulares v. MAPFRE*, 208 DPR 761, 784 (2022).

En ese proceso interpretativo, corresponde a los tribunales llenar las lagunas o vacíos que presente la ley y armonizar las disposiciones legales que aparenten estar en conflicto, procurando siempre un resultado sensato, lógico y razonable. *PR Fast Ferries et al. v. AAPP*, 213 DPR 103, 109 (2023); *Rosario Domínguez et als. v. ELA et al.*, 198 DPR 197, 206 (2017). No obstante, los tribunales no pueden introducir limitaciones o restricciones que el legislador no haya dispuesto expresamente, ni suplir omisiones bajo el pretexto de interpretar la intención legislativa. *Com. Elect. PPD v. CEE et al.,* 205 DPR 724, 755 (2020); *Rosado Molina v. ELA y otros*, 195 DPR 581, 589-590 (2016).

B

Conforme a estos principios, procede analizar las disposiciones relativas a la figura de la indignidad, el derecho de representación y el derecho de acrecer.

Según dispone el Artículo 1546 del Código Civil de Puerto Rico de 2020, la sucesión por causa de muerte constituye la transmisión de los derechos y obligaciones del causante que no se extinguen con su fallecimiento. 31 LPRA sec. 10911. Dentro de este marco, el ordenamiento civil reconoce como **legitimarios a los descendientes, al cónyuge supérstite y, a falta de estos, a los ascendientes**. 31 LPRA sec. 11162.

No obstante, la ley establece que determinados comportamientos del heredero o legitimario pueden privarlo del derecho a suceder. En esos casos, se configura la figura jurídica de la indignidad, que actúa como una

sanción provista por el legislador contra quien ha incurrido en conductas graves en perjuicio del causante. E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. Universidad de Puerto Rico, 2001, Tomo I, pág. 151. La indignidad tiene sus raíces en el Derecho Romano, y se aplicaba a aquellos herederos cuya conducta delictiva o inmoral los hacía indignos de recibir los bienes del causante. *Véase*, E. González Tejera, *op. cit.*; Diego Espín Canóvanas*, Manual de Derecho Civil Español,* 3ra ed., Madrid, 1974, Vol. V, pág. 4.

Este principio, concebido originalmente como una sanción moral y jurídica frente a la deslealtad familiar, fue posteriormente incorporado y desarrollado por las codificaciones modernas, incluido el Código Civil español de 1889 y, más tarde, el Código Civil de Puerto Rico de 1930. Desde la perspectiva del Derecho puertorriqueño, la indignidad para suceder se configura como una incapacidad de carácter relativo, derivada de la conducta del indigno respecto al causante. R. Ortega-Vélez, *Diccionario de Términos y Frases: Derecho Puertorriqueño*, 5ta ed. rev., San Juan, Ediciones SITUM, 2022, pág. 165. Esta figura aplica tanto a herederos testamentarios como a los llamados por vía intestada, y surte efectos desde el momento en que concurre la causa, sin necesidad de que el causante prive expresamente al indigno de su derecho a heredar. *Op. cit.*

De este modo, no toda persona con derecho hereditario puede efectivamente adquirir la herencia, ya que el ordenamiento condiciona ese derecho a la ausencia de causas que revelen una conducta indigna. El Artículo 1556 del Código Civil del 2020, recoge de manera expresa las causas de indignidad para suceder, entre las que se incluyen:

(a) el abandono o maltrato físico o psicológico del causante;

(b) la condena por atentar contra la vida del causante, de su cónyuge, de sus descendientes, de sus ascendientes o de otra persona llamada a la herencia cuya muerte favorezca al indigno;

(c) la condena por acusar o denunciar falsamente al causante de un delito grave;

(d) el incumplimiento reiterado de la obligación alimentaria impuesta administrativa o judicialmente;

(e) el dolo, la intimidación, el fraude o la violencia para inducir o impedir al causante a otorgar, revocar o modificar su testamento; y

(f) la destrucción, ocultación o alteración del testamento del causante.

31 LPRA sec. 10973.

Según dispone el referido Código, la calificación de la indignidad debe realizarse al momento de la **delación**, es decir, cuando se abre la sucesión. 31 LPRA sec. 10974. La consecuencia de ser declarado indigno es que la persona queda privada de la herencia o del legado, así como de su condición de legitimario. 31 LPRA sec. 10975.

En cuanto a la **legitimación activa para instar la acción de indignidad**, cabe señalar que el Artículo 1558 del Código vigente dispone que **"[s]olamente las personas que resultan favorecidas por la declaración de indignidad pueden invocarla."** 31 LPRA sec. 10975. Si bien el artículo delimita la legitimación activa a quienes resulten "favorecidos" por la declaración de indignidad, el legislador no especificó quiénes son esas personas ni de qué manera se configura ese beneficio, lo que permite hacer una interpretación amplia y razonable del concepto. No obstante, **se ha interpretado que la acción para declarar a una persona incapaz de heredar deberán entablarla todos aquellos que podrían resultar beneficiados como consecuencia del ejercicio de tal acción**. R. Ortega-Vélez, *op. cit.*, pág. 166.

Cabe destacar que el Artículo 1558 del Código Civil del 2020 adopta un lenguaje diferente al de los preceptos de los que se deriva —el Artículo 690 del Código Civil de 1930, y el Artículo 761 del Código Civil español—, lo que revela una voluntad legislativa de reformular su contenido y obliga a examinar su alcance a la luz del nuevo marco normativo.

El Articulo 690 de Código Civil de 1930 disponía lo siguiente:

Si el excluido de la herencia por incapacidad fuere hijo o descendiente del testador, y tuviere hijos o descendientes, adquirirán estos su derecho a la legítima. El excluido no

tendrá el usufructo y administración de los bienes que por esta causa hereden sus hijos.

31 LPRA. sec. 2266.

Este precepto establecía que la indignidad, una vez declarada, privaba al indigno de toda participación en el caudal hereditario del causante para cualquiera de las causas allí previstas. *Véase*, E. González Tejera, *op. cit.,* pág. 154. Debido a que el heredero perdía completamente su derecho a heredar, los demás coherederos o interesados estaban legitimados para incoar la correspondiente acción contra el indigno. E. González Tejera, *op. cit.,* pág. 158.

Por su parte, el Artículo 761 del Código Civil español dispone que: "Si el excluido de la herencia por incapacidad fuere hijo o descendiente, adquirirán éstos su derecho a la legítima." X. O'Callaghan Muñoz, *Comentario del Código Civil*, 1era ed., Barcelona, Ed. Bosch, S.A., 2000, Tomo IV, Vol. III, pág. 555. Conforme al derecho español, los efectos de la indignidad recaen únicamente en la porción legítima —la cual no podrá ser recibida por el legitimario indigno—, dando paso al derecho de representación a favor de sus descendientes. *Op. cit.*

En consonancia con lo anterior, **se ha interpretado que la acción dirigida a la declaración judicial de indignidad corresponde a toda persona que tenga interés en excluir al indigno de la sucesión, ya sea para adquirir o mejorar su derecho hereditario**. L. Roca-Sastre Muncunill, *Derecho de Sucesiones*, 2da ed. rev., Barcelona, Ed. Bosch S.A., 1995, Tomo I, pág. 400. De igual modo, cuando el legitimario no puede suceder a causa de la indignidad, la parte correspondiente aumenta la cuota de los legitimarios del mismo grado, lo que se conoce como el acrecimiento de la legítima, o pasa a los llamados en nombre del legitimario, lo que se conoce como la representación en la legítima. M. Albaladejo García, *Comentarios al Código Civil y Compilaciones Forales*, X (Núm. 1) Rev. Der. Priv. 283, 285 (1987).

C

El Código Civil de Puerto Rico de 2020 dispone en su Artículo 1616 que el derecho de acrecer constituye el incremento que se produce en la cuota de un heredero cuando la porción correspondiente a otro heredero queda vacante, salvo que tenga lugar el derecho de representación. Además, el precepto dispone que dicho derecho es irrenunciable. 31 LPRA sec. 11101. La vacante de la porción puede surgir por premoriencia, repudiación, incapacidad o indignidad del instituido. 31 LPRA sec. 11105.

En la sucesión intestada, cuando existen parientes del mismo grado y alguno no quiere o no puede suceder, su parte acrece a los otros del mismo grado, salvo que proceda el derecho de representación. 31 LPRA sec. 11102. De igual modo, en la sucesión testamentaria, el derecho de acrecer tiene lugar cuando en un llamamiento conjunto, uno de los llamados no quiere o no puede aceptar su parte, sin que exista sustituto designado, y cuando no proceda el derecho de representación. 31 LPRA sec. 11103.

Por su parte, el derecho de representación constituye una institución sucesoria mediante la cual los descendientes, hermanos o sobrinos del causante adquieren la facultad de heredar en lugar y grado de su ascendiente, recibiendo la porción que a este le hubiera correspondido, ya sea en la sucesión testada como en la intestada. 31 LPRA sec. 11091. Este derecho de representación opera únicamente en los supuestos expresamente previstos por la ley. Conforme al Artículo 1612, la representación procede cuando el llamado a heredar premuere al causante, es declarado indigno o incapaz, ha sido desheredado o repudia la herencia. 31 LPRA sec. 11092. En tales circunstancias, los descendientes del llamado adquieren su derecho a la herencia directamente por representación, sustituyéndolo en su posición jurídica.

III

A la luz de esta interpretación, corresponde aplicar dichos principios al caso de autos. En el presente caso, el Tribunal de Primera Instancia

desestimó la causa de acción de indignidad promovida por los hermanos del presunto indigno, y concluyó que únicamente los hijos menores del apelado —Sammy Awadallah Odeh, Ibrahim Awadallah Odeh y Miriam Awadallah Odeh— ostentaban legitimación activa para invocarla. No obstante, de la lectura del Artículo 1558 y de los preceptos de los que proviene, no se desprende una limitación tan estrecha.

El Artículo 1558 dispone que solo las "personas favorecidas" por la declaración de indignidad pueden promoverla, pero no define quiénes constituyen esas personas, ni circunscribe el beneficio a un interés patrimonial inmediato. En ese sentido, resulta razonable concluir que el término "favorecido" comprende **todo aquel que potencialmente pueda beneficiarse de la exclusión del indigno**, sean estos los descendientes del indigno, que podrían heredar en su lugar por derecho de representación, o los coherederos, que podrían beneficiarse mediante el derecho de acrecer en caso de que los descendientes del indigno no puedan o no quieran suceder.

Conforme discutido, los artículos de los cuales proviene el Artículo 1558 del Código Civil de 2020 —específicamente, el Artículo 690 del Código Civil de 1930, y el Artículo 761 del Código Civil español— regulaban los efectos que produce la declaración de indignidad en el ámbito patrimonial del indigno. En esencia, ambos reconocen que, una vez declarada la indignidad, los herederos del indigno pueden heredar por derecho de representación y que, si la acción se promueve luego de que el indigno haya recibido su porción, tanto los coherederos como los potenciales representantes están legitimados para instar la acción correspondiente. E. González Tejera, *op. cit.,* pág. 158-159.

Ninguno de estos perceptos impone un orden de prelación ni limita quiénes pueden promover la causa de indignidad. Por el contrario, ambos reconocen la posibilidad de que la acción sea ejercida por quienes se beneficien de la exclusión del indigno, ya sea por derecho de acrecer o por representación, según corresponda. Por ello, el Artículo 1558 debe

interpretarse de forma amplia y funcional, en consonancia con el propósito sancionador y moralizador del legislador, que busca impedir que quien ha cometido actos graves contra el causante sea llamado a heredar. Restringir indebidamente su alcance implicaría frustrar la finalidad ética y jurídica del instituto, especialmente cuando la exclusión del indigno redunda en beneficio de la comunidad hereditaria y en la preservación de la voluntad del causante.

En este caso particular, la madre y los hermanos de *Awadallah Odeh,* el presunto indigno, tienen un interés jurídico directo en que no participe de la sucesión quien, según alegan, ha incurrido en actos que la ley tipifica como indignos. Los apelantes, además de ser quienes concurren con el apelado en la herencia de don Sammy Odeh Abdul Jawad, poseen la prueba, los medios y la capacidad procesal para promover la acción, a diferencia de los hijos del presunto indigno.

Limitar la legitimación activa únicamente a los descendientes del indigno —quienes aún no son herederos efectivos hasta tanto se declare la indignidad— resultaría ilógico y contrario al propósito del legislador. En este punto procesal, la acción de indignidad precisamente busca determinar si el heredero directo del causante debe ser excluido, y por tanto, no puede condicionarse su ejercicio a la intervención de quienes solo pasarían a tener derecho hereditario una vez se declare dicha exclusión[18].

Negarles legitimación a los coherederos bajo tales circunstancias supondría desnaturalizar el propósito del instituto de la indignidad, privando al tribunal de la oportunidad de evaluar la conducta del presunto indigno y de excluirlo, si procede, de la sucesión. Por ello, una interpretación

---

[18] Según la jurisprudencia del Tribunal Supremo de Puerto Rico, una parte indispensable es aquella cuyo interés en la controversia es tan directo e inmediato, que no puede dictarse una sentencia final sin afectar radicalmente sus derechos o sin incurrir en inequidad. Véase, *FCPR v. ELA*, 211 DPR 521, 531-532 (2023). La Regla 16.1 de Procedimiento Civil de 2009 dispone que solo deben acumularse aquellas personas que tengan interés común sin cuya presencia no pueda adjudicarse la controversia. 32 LPRA Ap. V. **Así, mientras no se declare la indignidad del heredero Awadallah Odeh, sus descendientes carecen de un interés real e inmediato en la sucesión, pues su derecho de representación surge únicamente si la indignidad es declarada**. Por tanto, no resulta necesario traerlos al pleito en esta etapa. **No obstante, declarada la indignidad, deberá nombrarse un defensor judicial para los descendientes del indigno que, al momento de entrar al pleito a representar a su padre, sean menores de veintiún (21) años**.

armónica del Artículo 1558 nos impone concluir que la madre y los hermanos del presunto indigno se encuentran entre las "personas favorecidas" a las que alude la norma, por ser potenciales beneficiarios de la declaración de indignidad y por su legítimo interés en preservar la integridad moral del proceso sucesorio.

En consecuencia, este Tribunal concluye que el Tribunal de Primera Instancia erró al desestimar la causa de acción presentada por los apelantes y limitar la legitimación activa exclusivamente a los hijos menores del presunto indigno.

IV

Por los fundamentos anteriormente expuestos, expedimos el auto de *certiorari* y **revocamos** la *Sentencia* emitida y notificada por el foro primario el 18 de julio de 2025. En consecuencia, ordenamos la continuación de los procedimientos conforme a lo aquí dispuesto.

El juez Pérez Ocasio concurre sin opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones